[Nos. 33210-8-II; 33520-4-II.  Division Two.  August 29, 2006.]

TRANSALTA CENTRALIA GENERATION, L.L.C., ET AL., *Petitioners*, v. SICKLESTEEL CRANES, INC., ET AL., *Respondents*.

820

*William A. Kinsel* (of *Law Offices of William A. Kinsel, P.L.L.C.*) and *George M. Shumsky* (of *Shumsky & Backman*), for petitioners.

*Roy A. Umlauf* and *Kenneth M. Roessler* (of *Forsberg & Umlauf*); *Matthew T. Boyle* (of *Mitchell Lang & Smith*); *Mark C. Dean* (of *Kingman, Peabody, Fitzharris, & Ringer, P.S.*); and *E. Pennock Gheen III, Jerret E. Sale, Deborah L. Carstens, Shawnmarie Yates,* and *Charles A. Willmes* (of *Bullivant Houser Bailey, P.C.*), for respondents.

¶1 PENOYAR, J. — TransAlta Centralia Generation, L.L.C., TransAlta Corporation, and TransAlta Energy Corporation[1] appeal from two grants of summary judgment for (1) failure to mitigate damages by not enforcing a force majeure clause[2] in a contract between TransAlta Centralia Generation, L.L.C., and TransAlta Energy Marketing, Inc., and (2) dismissing claims for economic damages for foreign exchange losses because pure economic damages are unrecoverable in tort. We reverse and remand in part and affirm in part.

---

[1] In the interests of brevity, in this opinion we refer to the petitioners, TransAlta Centralia Generation, L.L.C., TransAlta Corporation, and TransAlta Energy Corporation, collectively as "TransAlta." We use "TransAlta" only when referring to the petitioners as a collective group. When necessary and appropriate, we refer to the separate entities. Our use of "TransAlta" should not be interpreted to mean that TransAlta Centralia Generation, L.L.C, TransAlta Corporation, and TransAlta Energy Corporation are a single entity.

[2] A contractual provision allocating the risk if performance is rendered impossible or impracticable, especially as a result of an event that the parties could not have anticipated or controlled. BLACK'S LAW DICTIONARY 674 (8th ed. 2004).

## FACTS

I. TransAlta's Corporate Structure

¶2 TransAlta Centralia Generation, L.L.C. (LLC), and TransAlta Energy Marketing, Inc. (TEMUS), are both wholly owned subsidiaries of TransAlta Corporation (TAC). The LLC and TEMUS are sister entities and entered into a contract in which the LLC agreed that it desired to sell to TEMUS all available energy, capacity, and ancillary services generated at the Centralia Power Plant (the plant). TEMUS is a power marketer authorized to buy and sell electric power at wholesale negotiated rates. Under the contract, TEMUS agreed that it would resell the LLC's energy output on the open market.

¶3 The LLC and TEMUS agreed that the LLC would provide TEMUS with energy output and that TEMUS would pay the LLC the net power revenue (NPR) minus TEMUS's marketing fees. NPR is:

> the total aggregate net power revenue from all transactions for the sale of [energy] Output by TEMUS minus the sum of all costs incurred by TEMUS in connection with the sale of the [energy] Output, including without limitation: i) the total aggregate net cost of all energy or capacity purchase transactions by TEMUS that were required to fulfil [sic] the outstanding contractual commitments due to Centralia having been derated for any reason . . . .

Clerk's Papers (CP) at 722.

¶4 Further, the parties agreed that:

> (a) Unless otherwise agreed, on or before the tenth (10th) day of each calendar month, TEMUS will provide the LLC with a statement of payment covering the prior calendar month. The statement of payment will set forth the Sale Price, the quantity of [energy] Output and ancillary services that were sold, together with any other relevant transactions.
>
> . . . .
>
> (c) To the extent that the Sale Price is a negative number (such negative Sale Price to be defined as the "Deficit Amount"),

then the LLC will within 10 Business Days following LLC's receipt of a statement from TEMUS for such Deficit Amount, remit to TEMUS the Deficit Amount by wire transfer pursuant to instructions for such wire transfer provided by TEMUS.

CP at 725.

¶5 The contract also included a force majeure clause, providing that the LLC's and TEMUS's performance under the contract could be suspended during a force majeure event, or an event outside the parties' control. It read:

> (a) *Except with regard to a Party's obligation to make payments under this Agreement,* in the event either Party hereto is rendered unable, wholly or in part, by Force Majeure to carry out its obligations, upon such Party's giving notice and full particulars of such Force Majeure as soon as reasonably possible, such notice to be confirmed in writing or by facsimile to the other Party, such obligations of said Party will, to the extent they are affected by such Force Majeure, be suspended during the continuance of said inability.
>
> . . . .
>
> (c) "Force Majeure" means an event that (i) is not within the control of the Party relying thereon and (ii) could not have been prevented or avoided by such Party through the exercise of due diligence.

CP at 724 (emphasis added).

II. THE CRANE ACCIDENT AND RESULTING LAWSUIT

¶6 TransAlta purchased an agreement in which a construction and engineering consortium had been hired to install equipment at the plant. The consortium subcontracted with PSF Industries, Inc., to perform the work, and PSF subcontracted with Sicklesteel.

¶7 On February 27, 2001, there was a crane accident at the plant; a Sicklesteel crane rolled over and damaged two conveyor belts. The conveyor belts were essential to the plant's operation because they transported coal into the plant that was used to generate the plant's energy.

¶8 The plant was shut down from February 27 to March 3, while the conveyor belts were repaired. During this time, the LLC's contractual obligation to provide power to TEMUS continued. The LLC did not attempt to evoke the force majeure clause in the LLC and TEMUS's agreement and did not make any other attempt to halt its contractual obligation to provide power to TEMUS. TEMUS purchased replacement power on the open market. It incurred substantial costs in purchasing the replacement power. If the LLC had not provided TEMUS with power, it could have been in breach of its contractual obligation to sell power to TEMUS and would have left TEMUS with a deficient power supply. TEMUS, then, would likely have been unable to meet its contractual obligations with other entities outside the TransAlta corporate structure.

¶9 After incurring the costs of the replacement power, the LLC, TAC, and TransAlta Energy Corporation sued Sicklesteel et al. for negligence, violations of the Washington products liability act, breach of contract, and foreign exchange losses resulting from the crane damage at the plant. TEMUS is not a party to this action.

¶10 Sicklesteel et al. moved for partial summary judgment, arguing that TransAlta failed to mitigate its damages because the LLC could have invoked the force majeure clause in the LLC and TEMUS's contract. If it had done so, Sicklesteel et al. argued, TransAlta would not have had to purchase the replacement power and would not have incurred the damages for suspension of the power supply when the plant was shut down. The trial court granted summary judgment in favor of Sicklesteel et al. regarding force majeure and dismissed TransAlta's damage claims related to the cost of the replacement power.

¶11 Next, Sicklesteel et al. moved for partial summary judgment, arguing that TransAlta's claims for damages based on foreign exchange losses were improper and should have been dismissed. The trial court granted summary judgment in favor of Sicklesteel et al. regarding foreign

exchange losses and dismissed TransAlta's claims based on foreign exchange losses. TransAlta now appeals both summary judgment rulings.

## ANALYSIS

### I. STANDARD OF REVIEW

¶12 On review of an order for summary judgment, we perform the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). The standard of review is de novo and we consider all facts in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). We affirm summary judgment if the pleadings, affidavits, depositions, and admissions on file demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). Because TransAlta appeals the trial court's grant of summary judgment, we review this appeal de novo.

### II. MITIGATION OF DAMAGES

¶13 TransAlta argues that it did not fail to mitigate its damages because it acted reasonably in allocating to the LLC the cost of the replacement power to meet its contractual obligation to TEMUS. TransAlta claims it acted reasonably because it complied with the contracting parties' agreed understanding that the LLC would pay for any needed replacement power. TransAlta argues that TEMUS had the contractual right to charge the LLC for the cost of replacement power.

¶14 Sicklesteel et al. counter that TransAlta failed to mitigate its damages by not enforcing the force majeure clause. Sicklesteel et al. argue that TransAlta's interpretation of the force majeure clause would render the clause meaningless and is not correct.

¶15 The doctrine of mitigation of damages, or avoidable consequences, prevents an injured party from

recovering damages that the injured party could have avoided if it had taken reasonable efforts after the wrong was committed. *Bernsen v. Big Bend Elec. Coop., Inc.*, 68 Wn. App. 427, 433, 842 P.2d 1047 (1993) (citing *Young v. Whidbey Island Bd. of Realtors*, 96 Wn.2d 729, 733-34, 638 P.2d 1235 (1982)). A person who has been injured by another's wrongdoing is given wide latitude and is only required to act reasonably in mitigating her damages. *Hogland v. Klein*, 49 Wn.2d 216, 221, 298 P.2d 1099 (1956) (citing CHARLES T. MCCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 35, at 133 (1935)).

¶16 Accordingly, whether a party properly mitigated her damages turns on a determination of reasonableness. An issue about which reasonable minds could differ is a jury question. *Christen v. Lee*, 113 Wn.2d 479, 514, 780 P.2d 1307 (1989) (Utter, J., dissenting in part) (citing *Shelby v. Keck*, 85 Wn.2d 911, 541 P.2d 365 (1975)).

¶17 If TransAlta acted reasonably in shifting the cost of the replacement power to the LLC, not TEMUS, then it properly mitigated its damages. This inquiry involves balancing multiple factors, including the contractual obligations between the LLC and TEMUS, the factors contributing to TransAlta's business decision to have the LLC purchase replacement power, the parties' ongoing and future business relationship, and the parties' corporate structure of risk allocation.

A. TransAlta's Contractual Obligations

¶18 The parties focus their arguments on the interpretation of the force majeure clause and whether it could have protected the LLC during the time the plant was shut down. TransAlta claims the force majeure clause would not have protected them; Sicklesteel et al. claim the force majeure clause would have protected the LLC.

¶19 Interpretation of a contract provision is a question of law appropriate for summary judgment only when (1) the interpretation does not depend on the use of extrinsic evidence or (2) only one reasonable inference can be

drawn from the extrinsic evidence. *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 120 Wn.2d 573, 582, 844 P.2d 428 (1993) (citing *Berg v. Hudesman*, 115 Wn.2d 657, 668, 801 P.2d 222 (1990)).

■ ¶20 The accident that caused the damage to the conveyor belts was a force majeure incident as defined by the contract because the crane accident was an event not "within the control of [the LLC]" and that "could not have been prevented or avoided by [the LLC] through the exercise of due diligence." CP at 724. The question remains whether Sicklesteel can establish that it was unreasonable for the LLC to not invoke the clause after the crane accident.

¶21 We cannot, however, as a matter of law, determine if TransAlta's actions were reasonable because reasonableness is a jury question. *Christen*, 113 Wn.2d at 514. There were multiple factors that went into the decision that the LLC would incur the cost of the replacement power—risk allocation, which entity had the financial reserves to purchase the replacement power, and the LLC and TEMUS's continuing business relationship. This court cannot determine as a matter of law whether the decision made was reasonable or unreasonable. We therefore hold that summary judgment was not proper.

### B. TransAlta's Business Decision

■ ¶22 We also hold that it is for the jury to determine if TransAlta acted reasonably in reaching its business decision to apply the cost of the replacement power to the LLC. Sicklesteel et al. should not be able to use the force majeure language to shield them from liability unless they can establish that TransAlta's business decision not to invoke force majeure was unreasonable given the contractual language, the corporate structure, and the parties' relationship as sister entities.

¶23 Summary judgment was not proper in this case. We reverse and remand to the trial court to determine whether TransAlta acted reasonably in interpreting the contractual language and in reaching its business decision to allocate the cost of replacement power to the LLC, not TEMUS.

¶24 Affirmed in part, reversed and remanded in part.

¶25 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON and ARMSTRONG, JJ., concur.

Reconsideration denied November 7, 2006.