[No. 40933-0-II.   Division Two.   December 6, 2011.]

G. Eldon Marshall et al., *Appellants*, v. Thurston County, *Respondent*.

*Mark O. Erickson*, for appellants.

*Mark R. Johnsen* and *Jeffrey G. Fancher*, for respondent.

¶1 WORSWICK, A.C.J. — G. Eldon Marshall and Geraldine Marshall appeal the dismissal on summary judgment of their claim against Thurston County (County), arguing that (1) a settlement agreement signed in 2003 did not release the County from damages incurred in 2009 and (2) res judicata does not bar their claim. We affirm, holding that although the release is ambiguous regarding liability for future flooding, res judicata bars the Marshalls' current claim.

## FACTS

¶2 In 1992, the Marshalls purchased property in Lacey, Washington. Between February 1996 and December 1999, the Marshalls' property flooded three times. In 2000, the Marshalls learned that the County had installed a storm water diversion device in 1994. According to the Marshalls, the device redirected surface storm water from neighboring streets, causing excess amounts of storm water to accumulate on the Marshalls' property. On October 24, 2001, the Marshalls filed a claim for damages with the County (the 2001 claim). The 2001 claim listed the "date of incident" as February 8, 1996, January 3, 1997, and "Dec 1999." Clerk's Papers (CP) at 84. In the space entitled "describe the cause of the injury or damage," the claim stated that the County caused the flooding by installing the storm water diversion device without providing for adequate runoff. CP at 84. In the 2001 claim, the Marshalls requested compensation for furnace and insulation repair, pumps, installation of a drainage system, and the decrease in the property's value and saleability.

¶3 The County denied the 2001 claim and advised the Marshalls to file a complaint in superior court. In 2003, the Marshalls filed a complaint alleging negligence, trespass, and inverse condemnation. In the complaint, the Marshalls alleged that the County had caused the flooding by installing the storm water diversion device. The County agreed to settle the suit for $8,812 in exchange for the Marshalls' stipulating to dismissal of their claims with prejudice and signing a release of liability. The Marshalls signed the release, and the trial court dismissed the lawsuit with prejudice.

¶4 The Marshalls' property flooded again in January 2009. On March 9, 2009, the Marshalls filed a claim against the County requesting compensation for expenses, "delay in saleability," and "extreme value impairment." CP at 88. The

County rejected this claim. On June 2, 2009, the Marshalls filed a new complaint, again alleging negligence and trespass. They later amended this complaint to include a claim for inverse condemnation.

¶5 The County filed a motion for summary judgment arguing that the Marshalls' claims were barred by (1) their signed release of liability, (2) the doctrine of res judicata, and (3) the statute of limitations.[1] The trial court granted the County's motion for summary judgment on June 11, 2010, without specifying the basis for summary judgment. The Marshalls appeal.

## ANALYSIS

### I. STANDARD OF REVIEW

¶6 We review summary judgments de novo. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009). Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). We consider all facts submitted and the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Atherton*, 115 Wn.2d at 516.

---

[1] On appeal, the parties do not argue the statute of limitations issue.

## II. Release of Liability

¶7 The Marshalls contend that their signed release of liability shielded the County only from liability for the 1996, 1997, and 1999 floods.[2] We disagree.

¶8 We interpret settlement agreements in the same way we interpret other contracts. *McGuire v. Bates*, 169 Wn.2d 185, 188, 234 P.3d 205 (2010). This means that we attempt to determine the parties' intent by focusing on their objective manifestations as expressed in the agreement. *McGuire*, 169 Wn.2d at 189. The parties' subjective intent is generally irrelevant if we "can impute an intention corresponding to the reasonable meaning of the actual words used." *McGuire*, 169 Wn.2d at 189.

¶9 Extrinsic evidence may be used to determine the meaning of specific words used, but not to show an intention independent of the instrument or to vary, contradict, or modify the words of the contract. *State v. R.J. Reynolds Tobacco Co.*, 151 Wn. App. 775, 783, 211 P.3d 448 (2009), *review denied*, 168 Wn.2d 1026, 228 P.3d 18 (2010). Contract interpretation is a matter of law only when the interpretation does not depend on extrinsic evidence, or the extrinsic evidence permits only one reasonable interpretation. *TransAlta Centralia Generation, LLC v. Sicklesteel Cranes, Inc.*, 134 Wn. App. 819, 826-27, 142 P.3d 209 (2006).

¶10 Contract terms are ambiguous if they are fairly susceptible to two different, reasonable interpretations. *Wm. Dickson Co. v. Pierce County*, 128 Wn. App. 488, 493-94, 116 P.3d 409 (2005). Summary judgment is not appropriate on an ambiguous contract. *See Wm. Dickson Co.*, 128 Wn. App. at 495.

---

[2] For the first time in their reply brief, the Marshalls also contend that if we read the 2003 release as exculpating the County from future liability, this will lead to an absurd result and will violate public policy. We do not address these arguments because the Marshalls raise them for the first time in their reply brief. *Stanzel v. Pierce County*, 150 Wn. App. 835, 851, 209 P.3d 534 (2009).

¶11 The release of liability that the Marshalls signed provided, "This release is inclusive of damage to property, bodily injury or death growing out of or in any way related to the matter set forth in and described in [the 2001 claim]." CP at 103. The release further provided, "The undersigned hereby declares that the terms of this settlement are for the express purpose of precluding forever any further additional claims arising out of or in any way connected with the incident that is the subject of the above referenced cause of action." CP at 103.

¶12 The release exculpates the County from liability related to the 2001 claim, as well as further claims arising from the "incident." The dispute here turns on the meaning of the word "incident." The 2001 claim suggests two reasonable interpretations of "incident." The claim lists as the "date of incident" the dates of the three floods that occurred between 1996 and 1999, suggesting that "incident" refers only to those particular floods. But the claim also describes the water diversion device installation as the cause of the flooding, suggesting that the "incident" was the County's storm water diversion device installation. The release is thus susceptible to two reasonable interpretations and is ambiguous. Therefore, summary judgment was not appropriate based on the meaning of the release.

## III. Res Judicata

¶13 Alternatively, the County argues that res judicata bars the Marshalls' current claim. We agree.

¶14 "The threshold requirement of res judicata is a final judgment on the merits in the prior suit."[3] *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004).

---

[3] The parties do not address this threshold question. But we note that a dismissal with prejudice operates as a final adjudication on the merits. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865 n.10, 93 P.3d 108 (2004); *see also Krikava v. Webber*, 43 Wn. App. 217, 219, 716 P.2d 916 (1986). Because the Marshalls' prior lawsuit was dismissed with prejudice, the threshold question is satisfied here.

Under the doctrine of res judicata, or claim preclusion, "a prior judgment will bar litigation of a subsequent claim if the prior judgment has a concurrence of identity with [the] subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made."

*City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 164 Wn.2d 768, 791-92, 193 P.3d 1077 (2008) (alteration in original) (internal quotation marks omitted) (quoting *In re Election Contest Filed by Coday*, 156 Wn.2d 485, 500-01, 130 P.3d 809 (2006)).

¶15 The Marshalls contest only the first and second factors. They assert that both the subject matter and causes of action differ between their two suits because their prior suit arose from the flooding between 1996 and 1999, while the current suit arose from the flooding in 2009. The Marshalls' argument fails.

A. *Subject Matter*

¶16 Washington courts have not articulated any precise test to determine when the subject matter of multiple claims is the same. *See* 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35:25, at 526 (2d ed. 2009). Our Supreme Court has held that in determining the identity of subject matter, " '[t]he critical factors seem to be the nature of the claim or cause of action and the nature of the parties.' " *Hayes v. City of Seattle*, 131 Wn.2d 706, 712, 934 P.2d 1179 (1997) (alteration in original) (quoting Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 WASH. L. REV. 805, 812-13 (1985)). Courts generally focus on the asserted theory of recovery rather than simply the facts underlying the dispute. *See, e.g., DeYoung v. Cenex Ltd.*, 100 Wn. App. 885, 892, 1 P.3d 587 (2000); *Kuhlman v. Thomas*, 78 Wn. App. 115, 118, 897 P.2d 365 (1995); *Hisle*, 151 Wn.2d at 866; *Hayes*, 131 Wn.2d at 712-13.

¶17 Here, the underlying facts are identical in each lawsuit. The County installed a storm water diversion device

that purportedly caused ongoing flooding and impairment of the land's value due to potential future flooding. The Marshalls clearly contemplated the risk of future flooding in their 2003 complaint, in which one cause of action was inverse condemnation. *See Olympic Pipe Line Co. v. Thoeny*, 124 Wn. App. 381, 393, 101 P.3d 430 (2004) (the measure of damages for an inverse condemnation claim is the diminution of fair market value caused by the government's taking). Thus, the subject matter of the 2003 complaint was not limited to the actual flooding but included the alleged permanent diminution in value of the Marshalls' land caused by the diversion device's installation, which repeatedly redirected surface storm water onto the Marshalls' property. Both of the Marshalls' lawsuits sought the same recovery based on the same underlying facts. Thus, the subject matter is identical.

### B. *Cause of Action*

¶18 Whether causes of action are identical " 'cannot be determined precisely by mechanistic application of a simple test.' " *Rains v. State*, 100 Wn.2d 660, 663-64, 674 P.2d 165 (1983) (quoting *Abramson v. Univ. of Haw.*, 594 F.2d 202, 206 (9th Cir. 1979)). To determine whether causes of action are identical, courts consider whether (1) prosecuting the second action would destroy rights or interests established in the first judgment, (2) the evidence presented in the two actions is substantially the same, (3) the two actions involve infringement of the same right, and (4) the two actions arise out of the same transactional nucleus of facts. *Rains*, 100 Wn.2d at 664 (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)); *accord Spokane County v. Miotke*, 158 Wn. App. 62, 67, 240 P.3d 811 (2010), *review denied*, 171 Wn.2d 1013, 249 P.3d 1029 (2011).

¶19 These factors weigh against the Marshalls. Except for the separate damages caused by the separate floods, all of the evidence necessary to recover on each suit is identi-

cal. In both suits, the Marshalls assert the same rights—the rights to compensation for the County's negligence, trespass, and inverse condemnation, based on the installation of the storm water diversion device. And the transactional nucleus of facts for both actions is the same—the County's installation of the storm water diversion device, which did not provide for adequate runoff and, instead, redirected surface storm water onto the Marshalls' property.

¶20 The County's installing the diversion device, which repeatedly redirected surface storm water onto the Marshalls' property, is the transaction that gave rise to the Marshalls' cause of action. Each flood was not a new cause of action, but rather additional damages resulting from the original installation, which did not provide for adequate runoff. The Marshalls sued based on a single wrongful act by the County, not a series of acts that gave rise to a series of causes of action.

¶21 The subject matter and cause of action of each suit was identical. We therefore hold that both suits asserted the same cause of action and the 2009 suit was accordingly barred under res judicata.

¶22 Before concluding, we address some of the dissent's arguments. The dissent asserts that the 2009 flood was a new cause of action because the Marshalls, in 2003, could not have proved events that would occur in 2009. But *some* difference in the evidence between cases is not dispositive. The question under the second factor of the *Rains* test is whether the evidence is *substantially* the same, not whether it is identical. Because all of the facts related to the County's liability were the same between the two suits, the evidence was substantially the same in both.

¶23 Nor were the new facts related to the 2009 flooding sufficient to give rise to a new transactional nucleus of fact under the fourth factor of the *Rains* test. The underlying transaction, the installation of the storm water diversion device, was the same. By asserting that the 2009 flood constitutes a new transactional nucleus of fact, the dissent

discounts the fact that the County took only one purportedly wrongful action—the installation of a water diversion device without adequate capacity to handle runoff. This single wrongful act was the sole transactional nucleus of fact; the new flood in 2009 was based on this same nucleus of fact, in spite of the timing of the damages.

¶24 We do not agree with the dissent's approach of analyzing each of the asserted legal theories separately. Whether the subject matter and cause of action are identical is not subject to any narrow, mechanistic test. *Rains*, 100 Wn.2d at 663-64; *see* 14A TEGLAND, *supra*, § 35:25, at 526. And the dissent proposes just such a mechanistic test, contending that so long as new evidence is needed to show some element necessary for recovery, res judicata cannot apply. On the contrary, res judicata applies when the subject matter and cause of action are the same; some differences in the legal theory asserted or in the facts alleged to support recovery do not necessarily rob a prior adjudication of preclusive effect. Here, the new damages in 2009 do not change the subject matter or cause of action and thus do not prevent the application of res judicata.

¶25 Also, the dissent relies in part on *Harsin v. Oman*, 68 Wash. 281, 123 P. 1 (1912), and *Mellor v. Chamberlin*, 100 Wn.2d 643, 673 P.2d 610 (1983). However, both *Harsin* and *Mellor* deal with covenants of title, where the courts have applied res judicata less strictly. *Mellor*, 100 Wn.2d at 646 ("[W]e maintain our view that res judicata principles are less strictly adhered to in the case of covenants of title."); *see also* 14A TEGLAND, *supra*, § 35:26, at 531. We disagree with the dissent's apparent argument that these cases have universal application.

¶26 Moreover, the principle that the dissent draws from *Harsin* and *Mellor*, that res judicata does not preclude causes of action based on facts that did not exist at the time of the original suit, applies to whether an action is precluded because it *could* have been raised earlier. *See Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 330-31, 941 P.2d

1108 (1997). That is not the basis of our holding here. We do not hold that the Marshalls' 2009 claim was precluded because they could have sued for the 2009 floods in 2003. Rather, we hold that the Marshalls' claim for the 2009 flood was one and the same with the 2003 claim because it was based on the same, single, purportedly wrongful act. Because their original suit was dismissed with prejudice, principles of res judicata do not permit them to recover for that single act in perpetuity simply by alleging new damages that resulted from it.

¶27 Accordingly, we hold that the Marshalls' current claim is barred by res judicata. We affirm summary judgment on this basis.

¶28 Affirmed.

HUNT, J., concurs.

¶29 ARMSTRONG, J. (dissenting) — The 2009 flood was a different and separate invasion of the Marshalls' property rights causing, the Marshalls allege, new property damage. Because it was not based on the same transactional nucleus of facts as the 2003 claims, res judicata does not bar it. Accordingly, I dissent.

¶30 Res judicata prevents relitigation of claims the parties presented or could have presented in an earlier proceeding. *Schoeman v. N.Y. Life Ins. Co.*, 106 Wn.2d 855, 859, 726 P.2d 1 (1986); *Norris v. Norris*, 95 Wn.2d 124, 130, 622 P.2d 816 (1980). To prevail on its res judicata defense, Thurston County (County) must prove, among other things, that the causes of action are identical. *City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 164 Wn.2d 768, 791-92, 193 P.3d 1077 (2008). Whether causes of action are identical turns on whether the two lawsuits arise out of the same transactional nucleus of facts. *Rains v. State*, 100 Wn.2d 660, 664, 674 P.2d 165 (1983). If they do not, res judicata will not bar the later action. *See Schoeman*, 106 Wn.2d at 860.

¶31 The majority easily finds the same transactional nucleus of facts for both actions: "the County's installation of the storm water diversion device." Majority at 355. If the majority is correct, then the facts necessary to the Marshalls' claims existed as soon as the County completed installing the diversion device. But to prove trespass, the Marshalls must show an actual invasion (the flood) of their property. *See Phillips v. King County*, 87 Wn. App. 468, 490, 943 P.2d 306 (1997) (requiring proof of intrusion onto or into the property), *aff'd in part*, 136 Wn.2d 946, 968 P.2d 871 (1998). Moreover, they must prove that the invasion damaged their property. The diversion device did not invade the Marshalls' property; nor did it alone cause damage.

¶32 The majority's analysis of the transactional nucleus of facts also fails when applied to the Marshalls' negligence and inverse condemnation claims. Installing the diversion device did not violate the Marshalls' personal or property rights. Nor did it alone cause the Marshalls harm (damages). Similarly, installing the diversion device did not inversely condemn the Marshalls' property. An inverse condemnation action requires proof of an actual taking or damaging of the plaintiff's property (again the floods).[4] Installation of the diversion device did not take or damage the Marshalls' property. Thus, the nature and extent of the 2009 flood and the damage it caused were not part of the transactional nucleus of facts in the 2003 action. Proving the *cause* of each flood does not prove either the trespass actions or the inverse condemnation action. The claims are complete only when the *causes* are followed by actual invasions of and damage to the Marshalls' property.

---

[4] Washington does not recognize an inverse condemnation claim based on threatened harm without any actual physical invasion of the plaintiff's property. *Aubol v. City of Tacoma*, 167 Wash. 442, 9 P.2d 780 (1932). Article I, section 16 of the Washington Constitution prohibits the taking or damaging of private property without just compensation. This provision allows a landowner to bring an inverse condemnation action to " 'recover the value of property which has been *appropriated in fact*, but with no formal exercise of the [condemnation] power.' " *Pierce v. Ne. Lake Wash. Sewer & Water Dist.*, 123 Wn.2d 550, 556, 870 P.2d 305 (1994) (emphasis added) (alteration in original) (quoting *Martin v. Port of Seattle*, 64 Wn.2d 309, 310 n.1, 391 P.2d 540 (1964)).

¶33 Nonetheless, the majority claims that the Marshalls "clearly contemplated the risk of future flooding in their 2003 complaint" with their inverse condemnation claim. Majority at 354. Thus, according to the majority, the 2003 complaint "alleged permanent diminution in value of the Marshalls' land caused by the diversion device's installation, which repeatedly redirected surface storm water onto the Marshalls' property." Majority at 354. The majority is simply wrong.[5] The Marshalls' 2003 complaint actually alleged that as a result of the "diversion of stormwater, the . . . Property and its improvements have been diminished in an amount to be determined at trial." Clerk's Papers at 42. The Marshalls did not allege a *permanent* diminution of their property values. The Marshalls also did not claim that any diminution in value was due to future flooding, nor could they bring a legally cognizable claim based on mere threatened harm of a physical invasion of the property. *See Aubol*, 167 Wash. 442. Further, dismissing the 2003 complaint would not bar future claims for *further diminution* based on additional flooding.[6]

¶34 Moreover, res judicata does not bar a later action that requires proof of facts that did not exist at the time of the earlier action. *See* 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35:26 (2d ed. 2009); *Mellor v. Chamberlin*, 100 Wn.2d 643, 647, 673 P.2d 610 (1983); *Harsin v. Oman*, 68 Wash. 281, 283-84, 123 P. 1 (1912); *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 330-31, 941 P.2d 1108 (1997). The flood invasions and property damage

---

[5] The argument is also inconsistent with the majority's insistence that the Marshalls' claim was complete when the County installed the diversion device. If the majority is correct, then future floods and future damages are not elements of the claim and we need not concern ourselves with whether they were included in the 2003 settlement and dismissal.

[6] If the majority is correct, the Marshalls could not recover for further diminution of value even if they improved the property after the 2003 settlement, thereby recovering the value lost from the first three floods.

allegedly caused by the 2009 flood did not exist in 2003. Thus, res judicata could not possibly bar them.[7]

¶35 In essence, the majority and I have one simple dispute. The majority believes that the Marshalls' claims were complete and ripe when the County installed the water diversion device, which it labels the "sole transactional nucleus of fact" for both actions. Majority at 356. I believe that all the Marshalls' claims involve three elements: (1) the County's negligent installation of the diversion device, (2) the resulting flood invasions of the Marshalls' property, and (3) the resulting damage. Because elements two and three in the 2009 actions differ from elements two and three in the 2003 action, res judicata does not bar the Marshalls' 2009 action. I cannot agree with the majority's misapplication of res judicata to deny the Marshalls their day in court.

---

[7] *Harsin* and *Mellor* illustrate this point. Both actions involved multiple lawsuits that arose out of real property sales. The *Harsin* court explained the rationale: this does not mean the subject matter of a cause of action can be litigated but once. It may be litigated as often as an independent cause of action arises that because of its subsequent creation, could not have been litigated in the former suit. *Harsin*, 68 Wash. at 283-84.