IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ABDIKADIR HASSAN, ADEN YUSUF, AMAN ADAM, AMINA AHMED, ANAB ALI, ASHA ALI, ASHWANI BHARDWAJ, BINH LE, CHINDERPAL SINGH, FADUMO MOHAMED, FARDOUS HUSSEIN, FARHIA ADAM, FELIX GARCIA, GURMAIL SINGH, HAI PHAM, HAMZA ADEN, HANI OSMAN, HARINDER NAHAL, JASWINDER GREWAL, JASMINDER SINGH GILL, JOGGIT SINGH BHULLAR, MACARIO ESPINOZA, MALKIT SINGH, MURAYO GULED, RESHAM SINGH GILL, SALADO KHALIF ALI, SURINDER SINGH, THU THI NGUYEN, UBAH SHEIK, VALENTIN GALLETA, YASIN ABDULLAHI, ABDIHAKIM RASHID, ADEN JAMA, AHMED ADAM, ALI ALI, AYAAN NUUR, BASRA BASHIR, BURHAN FARAH, DALJINDER SINGH, FARHIO GURHAN, FARHIYO HUSSIEN, GURJIT SINGH, HARLIN KAUR, HASSAN ABDI, HUSSEIN ADEN MOLAMED, HUSSEIN ALI, ISHMAHAN MUSE, KULDIP SINGH, LARRY TULLIS, LAYLA YUUSUF, MINO YUSUF, MOHAMED WARE, MOHAMUD MOALIN, MUJHTAAR ALI, MUHUBO BARQADLE, MUHYADIIN ALI, MULKI ABDI, NAIMA AHMED and SADIA ADAN, | No. 80542-8-I<br><br>DIVISION ONE<br><br>ORDER GRANTING MOTION TO PUBLISH OPINION, AND WITHDRAWING AND SUBSTITUTING OPINION |
| Appellants, | |

v.

GCA PRODUCTION SERVICES, INC.,

Respondent.

Respondent GCA Production Services, Inc., has filed a motion to publish the unpublished portion of the opinion filed on April 5, 2021.  Appellants Abdikadir Hassan, et al., have filed an answer to respondent's motion to publish.  The court has determined that said motion to publish should be granted.  Now, therefore, it is hereby

ORDERED that respondent's motion to publish the opinion in full is granted.  It is further

ORDERED that the opinion filed on April 5, 2021, is withdrawn and a substitute published opinion be filed.

_____
Dwyer, J.

WE CONCUR:

_____        _____
Coburn, J.                       Chun, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ABDIKADIR HASSAN, ADEN YUSUF, AMAN ADAM, AMINA AHMED, ANAB ALI, ASHA ALI, ASHWANI BHARDWAJ, BINH LE, CHINDERPAL SINGH, FADUMO MOHAMED, FARDOUS HUSSEIN, FARHIA ADAM, FELIX GARCIA, GURMAIL SINGH, HAI PHAM, HAMZA ADEN, HANI OSMAN, HARINDER NAHAL, JASWINDER GREWAL, JASMINDER SINGH GILL, JOGGIT SINGH BHULLAR, MACARIO ESPINOZA, MALKIT SINGH, MURAYO GULED, RESHAM SINGH GILL, SALADO KHALIF ALI, SURINDER SINGH, THU THI NGUYEN, UBAH SHEIK, VALENTIN GALLETA, YASIN ABDULLAHI, ABDIHAKIM RASHID, ADEN JAMA, AHMED ADAM, ALI ALI, AYAAN NUUR, BASRA BASHIR, BURHAN FARAH, DALJINDER SINGH, FARHIO GURHAN, FARHIYO HUSSIEN, GURJIT SINGH, HARLIN KAUR, HASSAN ABDI, HUSSEIN ADEN MOLAMED, HUSSEIN ALI, ISHMAHAN MUSE, KULDIP SINGH, LARRY TULLIS, LAYLA YUUSUF, MINO YUSUF, MOHAMED WARE, MOHAMUD MOALIN, MUJHTAAR ALI, MUHUBO BARQADLE, MUHYADIIN ALI, MULKI ABDI, NAIMA AHMED and SADIA ADAN, <br><br> Appellants, | No. 80542-8-I <br><br> DIVISION ONE <br><br> PUBLISHED OPINION |

No. 80542-8-I/2

v.

GCA PRODUCTION SERVICES,
INC.,

Respondent.

SMITH, J. — This case revolves around the interpretation of SeaTac

Municipal Code (SMC) 7.45.010(M)(2) (ordinance), which requires defined

transportation employers, including those that provide or operate rental car

services, to pay employees $15 per hour. In 2009, GCA Production Services Inc.

(GCA) contracted with Avis Budget Car Rental LLC to shuttle Avis's rental cars to

and from its Seattle-Tacoma International Airport (Sea-Tac Airport) location in

SeaTac, Washington. In 2014, after SeaTac residents voted to raise the

minimum wage for certain, but not all, employees, the city of SeaTac enacted

SMC 7.45.050. When GCA failed to pay its employees $15 per hour, a number

of employees filed a complaint in the United States District Court for the Western

District of Washington, and others filed wage complaints with the Washington

Department of Labor and Industries (DLI). The employees alleged—and allege

here—that GCA is a transportation employer subject to the ordinance. The

district court and DLI concluded that the ordinance did not apply to GCA.

Later, many of the same employees filed a complaint in superior court,

which is the subject of this appeal. GCA moved to dismiss the lawsuit based on

the doctrines of claim preclusion and collateral estoppel. On December 11,

2018, in its order on GCA's motion to dismiss (2018 Order), the court addressed

the motion as a summary judgment motion and concluded that claim preclusion

2

barred 13 employee-plaintiffs who had filed complaints with DLI from relitigating their claim. GCA then moved for summary judgment, this time arguing that it was not subject to the ordinance. On September 4, 2019, the superior court granted GCA's motion and concluded that GCA was not a transportation employer under the ordinance (2019 Order).

The employees appeal both orders. First, we review the issue of claim preclusion and GCA's appeal of the 2018 Order. Because an additional 37 plaintiffs had filed wage complaints with DLI, claim preclusion also bars their claims. Therefore, we reverse the 2018 Order as to those 37 employees and dismiss their complaints. With regard to the 2019 Order and the remaining 9 employees, because the ordinary meaning of providing or operating rental car services does not include the services that GCA provided to Avis, the trial court did not err when it concluded that GCA was not subject to the ordinance. Therefore, we reverse in part the 2018 Order, but we affirm the 2019 Order. We thereby dismiss the complaint in its entirety.

FACTS

In September 2009, GCA and Avis entered into the "Master Supplier Agreement" (MSA). Pursuant to the MSA, GCA managed and operated "the on-airport shuttling and off-airport shuttling duties for" Avis as an independent contractor. Specifically, GCA transported Avis's rental cars between various Avis locations in Seattle, Everett, Tukwila, and Tacoma, Washington.

In 2013, by voter initiative, SeaTac voters passed Proposition 1, which required a $15 minimum hourly wage for defined transportation and hospitality

3

employers. Subsequently, SeaTac enacted the proposition as chapter 7.45 SMC, which took effect on January 1, 2014.

In 2016, a group of GCA employees filed a complaint against GCA Services Group Inc.[1] (GSG) in the District Court for the Western District of Washington.[2] The plaintiffs sought payment of wages from GCA in accordance with the ordinance. They argued that GSG was a transportation employer under SMC 7.45.010(M)(1),[3] because it provided baggage handling, ground transportation management, and customer service in SeaTac. GSG moved for summary judgment, which the court granted, finding that GSG was not a transportation employer under SMC 7.45.010(M)(1). After the court denied the plaintiffs' motion for reconsideration, the plaintiffs amended their complaint. However, the parties stipulated to dismissal with prejudice a few months later. The plaintiffs did not appeal.

In February 2017, DLI sent GCA a letter, asserting that it had received wage complaints from 93 GCA employees (complainants) and that it would begin an investigation into those claims. Some complainants filed "minimum wage not paid claims," while others asserted that GCA violated the ordinance, specifically. However, DLI's letter indicated that the "complaints focus on [GCA's] failure to pay minimum wage set forth in" SMC 7.45.050. GSG, on

---

[1] GCA Services Group Inc. is GCA's parent company.
[2] The plaintiffs included Abdikhadar Jama, Aneb Abdinor Hirey, Rogiya Digale, Abdisalam Mohamed, Jashir Grewal, Udham Singh, Sukdev Singh Basra, Khalif Mahamad, Jama Diria, Ahmed F. Gelle, and Lul Salad.
[3] SMC 7.45.010(M)(1)(a) provides one definition for transportation employer under the ordinance.

behalf of GCA, responded, contending that it had "already been held as a matter of law to not be covered under the relevant SeaTac ordinance."

On July 21, 2017, DLI issued a "Determination of Compliance." DLI concluded that GCA did "not meet the definition of a 'Transportation Employer' for the purpose of Ordinance SMC 7.45." Seven complainants appealed to the Office of Administrative Hearings (OAH), which affirmed DLI's order.

On May 7, 2018, 32 employees filed the complaint in this case. They alleged that GCA was a transportation employer under SMC 7.45.010(M)(2) because it provided rental car services. A week later, the employees amended the complaint, adding 28 plaintiffs but asserting the same claim.

GCA answered the complaint and asserted that the complaint was barred "in whole or in part" because of claim preclusion or collateral estoppel. It filed a motion to dismiss, arguing that among other lawsuits and complaints,[4] the DLI investigation constituted a final judgment on the merits for the purpose of claim preclusion and collateral estoppel. GCA provided the court with a letter from DLI, which certified that there were no records found for nine plaintiffs.

The court granted in part and denied in part GCA's motion to dismiss but "consider[ed] the motion as one for summary judgment." It concluded that the DLI order and the doctrine of issue preclusion barred 13 plaintiffs' claims. Thus, the court allowed the remaining 46 plaintiffs' claims to go forward.

---

[4] Specifically, below, GCA contended that the district court case, Jama v. GCA Servs. Grp., Inc., No. C16-0331 RSL, 2017 WL 1397692, at *1 (W.D. Wash. Jan. 4, 2017) (court order), and the OAH's initial order on summary judgment barred the plaintiffs' claims. However, GCA abandons these arguments on appeal.

Following the court's order, the plaintiffs moved for summary judgment, and GCA filed a cross motion for summary judgment. GCA asserted that it was not a transportation employer and again asserted that the appellants' claims were "barred under the doctrines of claim and issue preclusion." The trial court granted GCA's motion, concluding that GCA did not fall under the ordinance's definition of transportation employer. The remaining employees (appellants) appeal both trial court orders.

## ANALYSIS

Under CR 56(c), "summary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (alteration in original). "We review rulings on summary judgment and issues of statutory interpretation de novo." Am. Legion Post No. 149 v. Dep't of Health, 164 Wn.2d 570, 584, 192 P.3d 306 (2008).

### Claim Preclusion

GCA contends that the trial court erred in its 2018 Order because "[a]ll [a]ppellants' claims are barred on the basis of collateral estoppel" and "[a]ll [a]ppellants who participated in proceedings before DLI should have their claims dismissed on the basis of claim preclusion." With regard to collateral estoppel, we decline to address the issue because GCA failed to adequately brief its analysis thereof.[5] With regard to claim preclusion, 37 appellants sought relief

---

[5] For example, GCA does not discuss the standard that we must apply to discern whether an administrative hearing has preclusive effect. Similarly, GCA's briefing below lacked an adequate analysis regarding the preclusive effect of the

from DLI. Accordingly, claim preclusion bars those 37 appellants from relitigating their claim.

"'The doctrine of res judicata [or claim preclusion] rests upon the ground that a matter which has been litigated, or on which there has been an opportunity to litigate, in a former action in a court of competent jurisdiction, should not be permitted to be litigated again.'" Ensley v. Pitcher, 152 Wn. App. 891, 899, 222 P.3d 99 (2009) (italics omitted) (internal quotation marks omitted) (quoting Marino Prop. Co. v. Port Comm'rs of Port of Seattle, 97 Wn.2d 307, 312, 644 P.2d 1181 (1982)). Because it is a question of law, we review a determination that claim preclusion applies de novo. Weaver v. City of Everett, 194 Wn.2d 464, 473, 450 P.3d 177 (2019). "'The threshold requirement of [claim preclusion] is a valid and final judgment on the merits in a prior suit.'" In re Marriage of Weiser, 14 Wn. App. 2d 884, 903, 475 P.3d 237 (2020) (quoting Ensley, 152 Wn. App. at 899). And claim preclusion "applies in the administrative setting only where the administrative agency 'resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" Stevedoring Servs. of Am., Inc. v. Eggert, 129 Wn.2d 17, 40, 914 P.2d 737 (1996) (quoting Texas Emp'rs Ins. Ass'n v. Jackson, 862 F.2d 491, 501 (5th Cir. 1988)). Courts also consider "'(1) whether the agency[,] acting within its competence[,] made a factual decision; (2) agency and court procedural differences; and (3) policy

---

OAH's or DLI's orders. And "[w]e will not consider arguments that a party fails to brief." Sprague v. Spokane Valley Fire Dep't, 189 Wn.2d 858, 876, 409 P.3d 160 (2018) (refusing to address the plaintiff's claims, because he did not adequately brief the claims and cited no law establishing them).

considerations.'" Eggert, 129 Wn.2d at 40 (quoting Shoemaker v. City of Bremerton, 109 Wn.2d 504, 508, 745 P.2d 858 (1987)).

Here, "[DLI] shall investigate . . . wage complaint[s]." RCW 49.48.083(1). A wage complaint is "a complaint from an employee to the department that asserts that an employer has violated one or more wage payment requirements." RCW 49.48.082(11). And a wage payment requirement includes statutory minimum wage requirements. See RCW 49.48.082(12) ("'Wage payment requirement' means a wage payment requirement set forth in RCW 49.46.020, 49.46.130, 49.48.010, 49.52.050, or 49.52.060, and any related rules adopted by the department."). In particular, RCW 49.52.050(2) provides that an employer is guilty of a misdemeanor if it "[w]ilfully and with intent to deprive the employee of any part of [their] wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, *ordinance*, or contract." (Emphasis added.) More broadly, however, DLI is tasked with investigating wage complaints under the Washington Minimum Wage Act (MWA), chapter 49.46 RCW. The MWA establishes "minimum standards for wages, paid sick leave, and working conditions of all employees in this state, unless exempted herefrom, and is in addition to and supplementary to any other federal, state, or local law or ordinance." RCW 49.46.120. In short, DLI has authority to investigate whether an employer meets the minimum wage requirements based on the MWA or local ordinance. Thus, when DLI determined that GCA did not violate the ordinance, it resolved disputed issues of fact properly before it, and claim preclusion applies to DLI's determination as final judgment on the merits.

8

Next, the "party seeking to apply [claim preclusion] must establish four elements as between a prior action and a subsequent challenged action: 'concurrence of identity . . . (1) of subject-matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of the persons for or against whom the claim is made.'" Weaver, 194 Wn.2d at 480 (alteration in original) (quoting N. Pac. Ry. Co. v. Snohomish County, 101 Wash. 686, 688, 172 P. 878 (1918)). The appellants do not challenge the third or fourth elements, so our focus is on concurrence of identity of subject matter and cause of action. With regard to subject matter, "[c]ourts generally focus on the asserted theory of recovery rather than simply the facts underlying the dispute." Marshall v. Thurston County, 165 Wn. App. 346, 353, 267 P.3d 491 (2011). And

> [t]o determine whether causes of action are identical, courts consider whether (1) prosecuting the second action would destroy rights or interests established in the first judgment, (2) the evidence presented in the two actions is substantially the same, (3) the two actions involve infringement of the same right, and (4) the two actions arise out of the same transactional nucleus of facts.

Marshall, 165 Wn. App. at 354.

In Marshall, G. Eldon and Geraldine Marshall first filed suit against Thurston County, alleging negligence, trespass, and inverse condemnation for the flooding of their property caused by the county's installation of a storm water diversion device and failure to provide for adequate runoff. 165 Wn. App. at 349. The Marshalls settled the lawsuit and released the county from future liability. Marshall, 165 Wn. App. at 349. After their property flooded again, the Marshalls filed a new lawsuit against the county, again alleging negligence, trespass, and inverse condemnation. Marshall, 165 Wn. App. at 349-50. The trial court

9

granted the county's motion for summary judgment, and on appeal, the court concluded that claim preclusion barred the Marshall's claims. Marshall, 165 Wn. App. at 350, 352. The court held that there was subject matter concurrence because the underlying facts were identical in each lawsuit, i.e., the county's installation of a diversion device, and that there was cause of action concurrence because the evidence, rights, and transactional nucleus of facts were identical in both lawsuits. Marshall, 165 Wn. App. at 354-55. The court noted that "some differences in the legal theory asserted or in the facts alleged to support recovery do not necessarily rob a prior adjudication of preclusive effect." Marshall, 165 Wn. App. at 356.

Similarly, here, the appellants propose that they are entitled to a minimum wage of $15 per hour, and the facts for both the DLI investigation and the instant complaint are identical. Moreover, the appellants assert the same rights—the right to back pay for wages not paid in accordance with the ordinance. And the transactional nucleus of facts for both actions is the same—GCA's failure to pay the appellants $15 per hour. Cf. Weaver, 194 Wn.2d at 482 (holding that claim preclusion did not bar plaintiff's permanent disability claim because the claim did not exist at the time of his previous claim for temporary disability). And though 37 of the appellants did not allege that GCA violated the ordinance, specifically, parties are precluded from bringing "entire claims when those claims either were brought or could have been brought in a prior action." Weaver, 194 Wn.2d at 481. Therefore, the subject matter and cause of action for the appellants that filed wage complaints are the same. See Weaver, 194 Wn.2d at 480 (holding

that the causes of action were the same where the plaintiff's two cases involved "compensation for work-related illness or injury").

Given that DLI's judgment binds all 37 appellants who filed wage complaints with DLI, those appellants are barred from relitigating their claim that GCA violated the ordinance. However, because the remaining 9 appellants did not bring a complaint to DLI, their claims are not barred by claim preclusion. Thus, the trial court erred in concluding that claim preclusion did not bar those 37 plaintiffs' claims.

The appellants assert that the complainants who filed only a minimum wage not paid complaint are not barred because they did not claim that GCA violated the ordinance. We disagree for a number of reasons, but most importantly because the resolution of a minimum wage not paid complaint necessarily required DLI to determine whether GCA was subject to the ordinance. Thus, DLI had authority to investigate the ordinance's applicability as to GCA with regard to all complainants. The appellants' assertion is without merit. For these reasons, we reverse the 2018 order and grant summary judgment in favor of GCA on the basis of claim preclusion as to the 37 appellants who filed wage complaints with the DLI.

## SMC 7.45.010(M)(2)

The appellants contend that the trial court erred when it concluded in its 2019 Order that GCA was not a transportation employer. Because GCA did not provide or operate rental car services under the ordinary meaning of the terms, we disagree.

"We . . . construe a municipal ordinance according to the rules of statutory interpretation." Seattle City Light v. Swanson, 193 Wn. App. 795, 810, 373 P.3d 342 (2016). In statutory interpretation, our main "'objective is to ascertain and carry out the Legislature's intent.'" Seattle Hous. Auth. v. City of Seattle, 3 Wn. App. 2d 532, 538, 416 P.3d 1280 (2018) (quoting Citizens All. for Prop. Rights Legal Fund v. San Juan County, 184 Wn.2d 428, 435, 359 P.3d 753 (2015)). "'[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" Seattle Hous. Auth., 3 Wn. App. 2d at 538 (alteration in original) (quoting Citizens All., 184 Wn.2d at 435). Statutory analysis "begins with the text and, for most purposes, should end there as well." Maylon v. Pierce County, 131 Wn.2d 779, 799, 935 P.2d 1272 (1997).

Similarly, "[i]nitiatives will be interpreted from their plain language, if possible. However, when an initiative is susceptible to multiple interpretations, we employ the standard tools of statutory construction to aid our interpretation." Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, 149 Wn.2d 660, 670, 72 P.3d 151 (2003). And "[t]he words of an initiative will be read 'as the average informed lay voter would read [them].'" Parents Involved in Cmty. Sch., 149 Wn.2d at 671 (second alteration in original) (quoting W. Petrol. Imps., Inc. v. Friedt, 127 Wn.2d 420, 424, 899 P.2d 792 (1995)).

Under SMC 7.45.010(M)(2)(a)-(b), a "transportation employer" is "any person who: . . . [o]perates or provides rental car services utilizing or operating a fleet of more than one hundred (100) cars [and] . . . [e]mploys twenty-five (25) or

more nonmanagerial, nonsupervisory employees in the performance of that operation." The parties stipulated that GCA employed a workforce of 25 or more nonmanagerial, nonsupervisory employees and that Avis's fleet at Sea-Tac Airport included more than 100 rental cars. And the appellants do not appear to assert that GCA operated rental car services. Accordingly, the issue is whether GCA provided rental car services. But the ordinance does not define those terms. And when an ordinance does not define a term, we utilize the dictionary definition to inform the ordinance's plain meaning. See Lyft, Inc. v. City of Seattle, 190 Wn.2d 769, 781, 418 P.3d 102 (2018) (defining a term by "its usual and ordinary dictionary definition" where the statute provided no definition); Seattle Hous. Auth., 3 Wn. App. 2d at 539-40 (using the dictionary definition to define a term, which the at-issue ordinance did not define).

First, the dictionary defines (1) "rental" as "something rented," (2) "rent" as "a piece of property that the owner allows another to use in exchange for a payment in services, kind, or money," and (3) "services" as "to perform any of the business functions auxiliary to production or distribution of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1923, 2075 (2002). The dictionary defines "provide" as "to fit out or fit up : EQUIP" or "to supply for use." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1827. The average informed lay voter likely understands "provides" to mean "to supply for use." And "our focus must be on reading the language of the ordinance in a commonsense manner." Faciszewski v. Brown, 187 Wn.2d 308, 320, 386 P.3d 711 (2016).

Given the dictionary definitions, the ordinance's ordinary meaning is an

employer that supplies vehicles to renters in exchange for a payment or fee. More specifically, a transportation employer that provides rental car services is a business that supplies individuals with the possession and enjoyment of cars in exchange for payments. GCA does not receive a rental fee for its services to Avis, and it does not own the vehicles that Avis rents to individuals in exchange for payment. Indeed, GCA provides nothing in exchange for rent. Therefore, based on the plain meaning, we conclude that GCA is not a transportation employer for purposes of SMC 7.45.010(M)(2) and was not required to pay its employees $15 per hour.

This interpretation is supported by other sections of the ordinance. Specifically, when the ordinance intends to include subcontractors, like GCA, it does so expressly. That is, the definition of "hospitality employer" states that a hospitality employer "shall include . . . subcontractor[s]." SMC 7.45.010(D). The ordinance does not include similar language in the definition of transportation employer. And where a statute or ordinance explicitly omits a provision, the court must "give weight and significance to th[e] . . . vacancy." State v. Swanson, 116 Wn. App. 67, 76-77, 65 P.3d 343 (2003) (holding that where the statute does not include a particular requirement for the reinstatement of an individual's firearm rights, no requirement exists). In this context, this principle indicates that, because SMC 7.45.010(M)(2) does not include subcontractors in its definition of transportation employer, it does not apply to subcontractors. Thus, as a subcontractor to Avis, GCA is not subject to the ordinance.

The appellants disagree and contend that we must define "provides"

differently than "operates." While we agree, defining the terms differently does not affect our conclusion that the ordinance does not apply to GCA. Specifically, the average informed lay voter likely understands "operate" to mean to "put or keep in operation." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1581. And the definition of "operation" is "the quality or state of being functional." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1581. A common example is that someone "operated a grocery store." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1581 (italics omitted). Thus, given the ordinary meaning of "operates," a transportation employer who operates rental car services keeps a rental car business functioning. This is distinct from the ordinary definition of "provides" and therefore satisfies the statutory construction rule that "[w]hen the legislature employs different terms in a statute, we presume a different meaning for each term." Koenig v. City of Des Moines, 158 Wn.2d 173, 182, 142 P.3d 162 (2006).

Additionally, "or" is an inclusive disjunctive because it would lead to a strained result if "or" created an exclusive disjunctive. Specifically, the dictionary defines "'or' as a 'function word' indicating 'an *alternative* between different or unlike things.'" Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 528, 243 P.3d 1283 (2010) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1585). When used as an alternative, "or" is an "inclusive disjunctive—one or more of the unlike things can be true." Lake, 169 Wn.2d at 528 (emphasis omitted). However, "or" also can mean "a 'choice between alternative things,

states, or courses,'"[6] creating an "exclusive disjunctive—one or the other can be true, but not both." Lake, 169 Wn.2d at 528 (emphasis omitted). We look to "the surrounding context" to determine which meaning is intended. Lake, 169 Wn.2d at 528 ("Usually, the intended meaning is apparent from the surrounding context."). Here, if "or" was an exclusive disjunctive, it would mean that if a business provides rental car services, it cannot also operate a rental car services business. The court should "avoid an interpretation that results in unlikely or strained consequences." Swanson, 193 Wn. App. at 811. Therefore, we conclude that the "or" here connects two different verbs, either or both of which may be true.

The appellants also contend that, because SMC 7.45.010 is a remedial ordinance, we must construe it liberally. To this end, they contend that by concluding that employers like GCA are not subject to the ordinance, we would "eviscerate the ordinance." The ordinance's explanatory statement provides that the ordinance will require "certain hotels, restaurants, rental car businesses, shuttle transportation businesses, parking businesses, and various airport related businesses, including temporary agencies or subcontractors operating within the City," to provide employees a $15 per hour wage, "a living wage." But, as discussed, the ordinary definition of transportation employer does not apply to GCA as a matter of law. That is, a liberal construction does not change the commonsense understanding of rental car services, which do not include shuttle

---

[6] Lake, 169 Wn.2d at 528 (emphasis omitted) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1585).

driving services like those offered by GCA. Therefore, the appellants' contention fails.

Next, the appellants assert that because Avis's new subcontractor, Fleet Logics, pays its employees $15 per hour, GCA was required to do so. Fleet Logics' decision to pay its employees $15 per hour does not control this court's decision. It also is not persuasive. Specifically, there is no basis to conclude that, because Fleet Logics pays its employees $15 per hour, either it or GCA is legally required to do so. Therefore, the appellants' assertion fails.

Finally, the appellants contend that the trial court erred because it failed to view the evidence in the light most favorable to them. To this end, they cite GCA's "admissions" that it provides rental car services.[7] However, any factual evidence does not affect our interpretation of the ordinance.[8] And the appellants do not dispute the services that GCA provided to Avis. Our analysis focuses on the undisputed factual evidence regarding those services, and GCA's characterization does not change our determination. In short, no inferences were drawn to conclude that GCA does not provide rental car services. Therefore, this contention is without merit.

We reverse in part the 2018 Order and affirm the 2019 Order, dismissing

---

[7] GCA's PowerPoint presentation states that it provides "rental car outsource services" and that a GCA employee is a "Rental Car Services Driver (a.k.a. Shuttler)."

[8] When discussing "reasonable inferences," courts generally refer to the evidence and the fact-finding process. See, e.g., State v. Kaiser, 161 Wn. App. 705, 723-24, 254 P.3d 850 (2011) (separating its discussion of substantial evidence from its discussion of questions of law). Thus, the logical conclusion is that a court does not draw inferences when it considers questions of law.

the complaint in its entirety.

_Smith, J._

WE CONCUR:

_Coburn, J._        _Chun, J._