[No. 66319-4-I.   Division One.   May 7, 2012.]

THE NEWPORT YACHT BASIN ASSOCIATION OF CONDOMINIUM OWNERS, *Plaintiff*, v. SUPREME NORTHWEST, INC., ET AL., *Defendants*, BRIDGES INVESTMENT GROUP, LLC, ET AL., *Respondents*, CAROL RADOVICH, *as Personal Representative, Appellant.*

90

*J. Richard Aramburu* (of *Aramburu & Eustis LLP*), for appellant.

*Wendy E. Lyon* and *Paul J. Kundtz* (of *Riddell Williams PS*), for respondents.

¶1 Dwyer, J. — Attorney fees recoverable pursuant either to a contractual indemnity provision or to the theory of equitable indemnity are damages that must be proved by competent evidence at trial, just as must be any other element of damages. In this case, the trial court awarded attorney fees based upon a prevailing party provision of a purchase and sale agreement, a contractual indemnity provision, and principles of equitable indemnity. Nevertheless, in awarding these "costs and fees," the trial court relied solely upon the posttrial motions and declarations of the parties. No evidence of these expenses was produced at trial. Nor did the trial court attempt to segregate those fees

arising as damages from those arising as costs recoverable pursuant to the contractual prevailing party provision. Accordingly, we reverse in part and affirm in part.

I

¶2 In July 1980, John Radovich[1] and his development partner, Russell Keyes, executed a quitclaim deed to the Newport Yacht Basin Association of Condominium Owners (NYBA), an unincorporated association that manages a marina on the shore of Lake Washington in Bellevue. The deed purported to convey fee title to certain areas—previously designated as easements for ingress, egress, drainage, and parking—located along the eastern, northern, and western edges of an upland commercial property (the commercial parcel) owned by Radovich and Keyes in equal shares. The deed was recorded on May 29, 1981.

¶3 Even before the execution of the quitclaim deed, the commercial parcel was leased to Douglas and Margie Burbridge, who operated a boat business on the property. In 1983, Keyes agreed to sell his undivided one-half interest in the commercial parcel to the Burbridges, who had long desired to purchase the property. In 1991, Keyes executed a statutory warranty deed, conveying his undivided one-half interest in the commercial parcel. This deed, which was recorded that year, purported to convey the same property that had been described in the 1981 quitclaim deed. In 2004, the Burbridges conveyed their interest in the commercial parcel to their newly formed investment company, Bridges Investment Group LLC.

¶4 In 2004, Radovich also agreed to sell his one-half interest in the commercial parcel to the Burbridges. Radovich and the Burbridges signed a purchase and sale

---

[1] John Radovich passed away in December 2011, prior to oral argument of this appeal. His wife, Carol Radovich, as personal representative of his estate, has been substituted as a party in this action. In this opinion, we use the surname Radovich to refer either to Mr. Radovich or his estate, as the context dictates.

agreement in February 2004. Pursuant to this agreement, Radovich paid for the Burbridges to obtain title insurance to ensure marketable title. Pacific Northwest Title Insurance Company (PNWT), which was employed to perform the title search, failed to discover the existence of the recorded 1981 quitclaim deed. Thereafter, the Burbridges assigned their rights under the purchase and sale agreement to Bridges, and Radovich conveyed his interest in the commercial parcel to Bridges by statutory warranty deed.

¶5 In 2007, Bridges agreed to sell the commercial parcel to Supreme Northwest Inc. (doing business as Seattle Boat). PNWT was again employed to provide title insurance, and, once again, the company failed to identify the 1981 quitclaim deed. Bridges then conveyed the commercial parcel to Seattle Boat by bargain and sale deed.

¶6 Following this conveyance, NYBA brought suit against Seattle Boat, seeking a declaratory judgment quieting title in NYBA to the property described in the 1981 quitclaim deed. Seattle Boat answered this complaint and filed a third party complaint against Bridges and the Burbridges, alleging breaches of their 2007 purchase and sale agreement and the 2007 bargain and sale deed. In turn, Bridges filed a fourth party complaint against Radovich and Keyes, alleging breach of the 2004 statutory warranty deed, breach of the related purchase and sale agreement, and unjust enrichment.[2]

¶7 Both Radovich and Bridges moved for summary judgment. The trial court denied Radovich's motion without explanation. The court then determined that, as a matter of law, if the 1981 quitclaim deed was valid and enforceable, Radovich breached the 2004 statutory warranty deed and related purchase and sale agreement. Following a bench trial, the trial court determined that the quitclaim deed was invalid and unenforceable based upon several legal and equitable principles.

---

[2] Bridges later dismissed its fourth party claims against Keyes without prejudice.

¶8 Thereafter, Bridges moved for an award of attorney fees and costs against Radovich based upon (1) the prevailing party provision of the 2004 purchase and sale agreement, (2) the indemnity provision of the purchase and sale agreement, and (3) principles of equitable indemnity. Radovich opposed this motion and requested an evidentiary hearing on the issue of attorney fees. The trial court denied the request for an evidentiary hearing and, based solely on the written submittals, granted Bridges' motion and awarded fees and costs in the amount of $376,469.41.

¶9 Radovich appeals from the trial court's denial of his summary judgment motion, the court's order granting partial summary judgment to Bridges, and the subsequent award of attorney fees and costs.

II

¶10 As a threshold matter, we note that we have determined in the linked appeal that the trial court erred by ruling that the 1981 quitclaim deed was neither intended to convey fee title nor enforceable. *See Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 56, 277 P.3d 18 (2012). Nevertheless, because the trial court's award of attorney fees to Bridges was based upon three separate theories—none of which the court viewed as depending upon the validity of the quitclaim deed—it remains necessary for us to determine the propriety of the fee award.

¶11 In addition, we note that the trial court treated each of Bridges' three alternative claims for attorney fees as equivalent and interchangeable, with each theory resulting in an identical award of fees to Bridges. Each of these claims—which involve different elements and different standards of review, and relate to different aspects of this multiparty litigation—must be analyzed separately when determining the appropriateness of an award of fees under each theory. As explained more fully below, both the propri-

ety and the amount of an award of fees depend greatly upon whether the award is based on principles of contractual indemnity or a theory of equity, or pursuant to a contractual prevailing party provision.

¶12 We address the issues as presented to us by the parties.

## III

¶13 Radovich first contends that the trial court erred by determining that, as a matter of law, in the event that the quitclaim deed was determined to be valid, Radovich breached the 2004 statutory warranty deed and related purchase and sale agreement. We disagree.

¶14 In reviewing an order for summary judgment, we engage in the same inquiry as the trial court. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is properly granted where the pleadings, affidavits, depositions, and admissions demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). All evidence must be considered in the light most favorable to the nonmoving party, and summary judgment may be granted only where reasonable persons could reach but one conclusion. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349-50, 588 P.2d 1346 (1979).

¶15 Here, the trial court determined "as a matter of law that if the 1981 Quit Claim Deed is later found to be valid and enforceable, then [Radovich] breached [the] 2004 Statutory Warranty Deed to [Bridges] and the related 2004 Purchase and Sale Agreement ("P&SA") with the Burbridges for failing to convey fee title to the property described in the 2004 Statutory Warranty Deed and related P&SA, and for failing to defend said title."

¶16 As indicated by the trial court's order, Radovich conveyed the commercial parcel to Bridges by statutory warranty deed. This type of deed carries five covenants,

which ensure against defects incurred both by the immediate grantor and by any prior owner. RCW 64.04.030. The grantor warrants to the grantee:

> "(1) that the grantor was seised of an estate in fee simple (warranty of seisin); (2) that he had a good right to convey that estate (warranty of right to convey); (3) that title was free of encumbrances (warranty against encumbrances); (4) that the grantee, his heirs and assigns, will have quiet possession (warranty of quiet possession); and (5) that the grantor will defend the grantee's title (warranty to defend)."

*Mastro v. Kumakichi Corp.*, 90 Wn. App. 157, 162, 951 P.2d 817 (1998) (quoting 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 7.2, at 447 (1995)). As Professor Stoebuck explains, the warranty of seisin is a "present" covenant—it is breached only where "the grantor did not own the covenanted estate on the date the deed was given." 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 14.3, at 119 (2d ed. 2004). Moreover, "the mere absence of that estate constitutes a breach; it is not necessary that the grantee suffer an intrusion against possession by another person." 18 STOEBUCK & WEAVER, *supra*, § 14.4, at 119.

¶17 Radovich does not dispute that, pursuant to the purchase and sale agreement and statutory warranty deed, he assumed the obligation to convey fee title to his undivided one-half interest in the commercial parcel to Bridges. Nor does he assert that these documents failed to except the property described in the 1981 quitclaim deed. Instead, Radovich contends that he could not have breached the 2004 statutory warranty deed to Bridges because Bridges subsequently conveyed the commercial parcel in a "new independent transaction" in which Radovich took no part. However, no authority supports Radovich's assertion that liability for the breach of a statutory warranty deed is extinguished by a subsequent transaction. Indeed, if the covenanted estate was not owned by Radovich on the day that the deed was executed, then Radovich breached the

warranty of seisin on that day. *Mastro*, 90 Wn. App. at 162-63. The later sale of the property is immaterial to the determination of whether such a breach occurred.

¶18 Nevertheless, Radovich asserts that the summary judgment order was improper because Bridges could not be liable to Seattle Boat based on the third party complaint in which Seattle Boat sued Bridges for failing to convey fee title to the entire commercial property. In support of this argument, Radovich contends that the 2007 bargain and sale deed used to convey the commercial parcel makes clear that Bridges did not warrant that it was seized of an estate in fee simple.[3] However, as explained above, this argument is irrelevant to determining whether a breach of the 2004 statutory warranty deed occurred. Instead, the issue of Bridges' liability to Seattle Boat is pertinent only to the question of what damages, if any, flowed from Radovich's breach of the statutory warranty deed—a question that was not addressed by the trial court's summary judgment order.[4] Radovich's breach of the warranty of seisin occurred, if at all, on the day that he executed

[3] It is puzzling that Bridges did not assert this argument against Seattle Boat at trial and, in fact, withdrew a motion for summary judgment that would have adopted this line of reasoning. Radovich contends that, because PNWT paid the legal fees for both Seattle Boat and Bridges, the insurer can recover its expenses only if Bridges remains liable to Seattle Boat. Only in these circumstances is it possible for Bridges to then pass on this liability to Radovich, the only party whose legal expenses were not financed by PNWT. There is some evidence that collusion between these nominally adverse parties existed. Radovich points to a letter from a lawyer of Bridges to a lawyer of Seattle Boat that read, "We look forward to coordinating our efforts with you and your office and with Pacific Northwest Title[,] which we understand has retained your services on behalf of Seattle Boat." Nevertheless, in the absence of more compelling evidence, we decline to conclude that any impropriety occurred.

Moreover, in light of our determination in the linked appeal that the quitclaim deed is valid and enforceable, the trial court must address this issue on remand. If Bridges is not, in fact, liable to Seattle Boat for breach of the 2007 bargain and sale deed, the damages to Bridges resulting from Radovich's breach of the 2004 statutory warranty deed will be substantially limited.

[4] The trial court did not implicitly decide this question by denying Radovich's motion for summary judgment. Radovich asserts that, because the 2007 bargain and sale deed limited Bridges' liability to Seattle Boat, Bridges could suffer no damages as the result of Radovich's breach of the 2004 statutory warranty deed and related purchase and sale agreement. Accordingly, he contends that the trial

the 2004 deed. As the trial court's summary judgment order was limited to this determination, the court did not err by so ruling.[5]

## IV

¶19 Radovich next contends that, because Bridges was not the prevailing party in its litigation against Radovich, the trial court erred by awarding attorney fees to Bridges based upon the prevailing party provision in the purchase and sale agreement. We agree.

■■ ¶20 The general rule in Washington is that absent a contract, statute, or recognized ground of equity, attorney fees are not available as either costs or damages. *City of Seattle v. McCready*, 131 Wn.2d 266, 275, 931 P.2d 156 (1997). The case law regarding attorney fees awardable as the costs of an action is well developed. *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 759, 162 P.3d 1153 (2007). Whether a particular contractual provision authorizes an award of attorney fees as costs is a legal question. *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). When authorized by con-

court erred by denying his motion for summary judgment. However, the damages resulting from these breaches are not limited by Bridges' liability to Seattle Boat. Indeed, as discussed later in this opinion, these damages include attorney fees incurred as a result of Radovich's failure to indemnify Bridges pursuant to the purchase and sale agreement. Because the amount of these damages is a factual question, the trial court did not err by denying Radovich's motion for summary judgment.

[5] Radovich makes two additional arguments based upon the fact that the Burbridges already owned a one-half interest in the commercial parcel at the time that the 2004 statutory warranty deed was executed. Both are without merit. First, whether Keyes breached his own warranty to convey title when he sold his one-half interest in the commercial parcel to the Burbridges has no impact on Radovich's own breach. It is undisputed that Radovich purported to convey his one-half interest in fee title to the *entire* commercial property by way of the 2004 statutory warranty deed.

Second, the Burbridges' knowledge of the quitclaim deed is irrelevant to the question of Radovich's breach. It is well established that a grantee's knowledge of a defect does not eliminate a grantor's liability for that defect. *Edmonson v. Popchoi*, 172 Wn.2d 272, 283-84, 256 P.3d 1223 (2011); *Fagan v. Walters*, 115 Wash. 454, 457, 197 P. 635 (1921). Accordingly, neither contention provides a basis to disturb the trial court's order granting partial summary judgment.

tract, the determination of a reasonable attorney fee award is a matter within the discretion of the trial court. *Noble v. Safe Harbor Family Pres. Trust*, 167 Wn.2d 11, 17-18, 216 P.3d 1007 (2009).

¶21 Here, the 2004 purchase and sale agreement provides:

> In the event any action or proceeding is brought by either party against the other related to this Agreement, the substantially prevailing party shall be entitled to recover from the other party its costs, including but not limited to reasonable attorneys' fees, incurred in such action or proceeding, including any appeal, which amounts shall be included in any judgment entered in such action or proceeding.[6]

Relying on the same reasoning on appeal as it did at trial, Bridges asserts that it was the "substantially prevailing party" because the trial court granted its motion for partial summary judgment, thus assigning liability to Radovich for breach of the purchase and sale agreement and the statutory warranty deed in the event that the quitclaim deed was found to be valid and enforceable.

¶22 Whether a party is a "prevailing party" is a mixed question of law and fact that is reviewed pursuant to an error of law standard. *Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship*, 158 Wn. App. 203, 231, 242 P.3d 1 (2010), *review denied*, 171 Wn.2d 1014 (2011). As a general rule, a prevailing party is one that receives an affirmative judgment in its favor. *Marassi v. Lau*, 71 Wn. App. 912, 915, 859 P.2d 605 (1993), *abrogated on other grounds by Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 200 P.3d 683 (2009). A prevailing party need not succeed on its entire claim to qualify for attorney fees, but it must substantially prevail in order to be entitled to such an award. *Silverdale Hotel Assocs. v. Lomas & Nettleton Co.*, 36 Wn. App. 762,

---

[6] It is significant that the parties contracted to treat attorney fees as "costs." This is typical of such provisions and distinguishes the claim of entitlement to an award of such fees from an action for indemnification, discussed *infra*.

773-74, 677 P.2d 773 (1984). Moreover, a successful defendant can also recover as a prevailing party. *Marine Enters., Inc. v. Sec. Pac. Trading Corp.*, 50 Wn. App. 768, 772, 750 P.2d 1290 (1988). The defendant need not have made a counterclaim for affirmative relief, as the defendant can recover as a prevailing party for successfully defending against the plaintiff's claims. *See Marassi*, 71 Wn. App. at 916.

¶23 Here, Bridges' fourth party complaint against Radovich was based upon the theory that Radovich breached the covenants of the statutory warranty deed and the provisions of the purchase and sale agreement. In its order granting partial summary judgment to Bridges, the trial court determined that, if the quitclaim deed was valid, then Radovich breached both the deed and the agreement as a matter of law. However, as these breaches were contingent upon the validity of the quitclaim deed, the court's order did not represent an affirmative judgment in Bridges' favor. Instead, because the trial court subsequently determined that the deed was, in fact, invalid, Radovich successfully defended against Bridges' claims that Radovich breached the 2004 statutory warranty deed and related purchase and sale agreement. The trial court erred by awarding attorney fees to Bridges based upon the prevailing party provision.[7]

V

¶24 Radovich next contends that the trial court erred by awarding attorney fees to Bridges based upon the indemnification provision of the purchase and sale agreement. We agree.

---

[7] Nevertheless, an award of attorney fees to Radovich pursuant to the prevailing party provision is also presently unwarranted. Because we determine in the linked appeal that the trial court erred by ruling that the quitclaim deed was invalid and unenforceable, further proceedings are necessary to determine which party substantially prevailed in this action. Accordingly, an award of attorney fees at this time would be premature. *See Home Realty Lynnwood, Inc. v. Walsh*, 146 Wn. App. 231, 242, 189 P.3d 253 (2008).

¶25 "In order to prove an indemnity claim, a plaintiff must demonstrate that there exists a contract containing an indemnity provision that binds the defendant to reimburse the plaintiff for the amount claimed." *Jacob's Meadow*, 139 Wn. App. at 757 n.3. Indemnity agreements are subject to the fundamental rules of contract interpretation—"the intent of the parties controls; this intent must be inferred from the contract as a whole; the meaning afforded the provision and the whole contract must be reasonable and consistent with the purpose of the overall undertaking; and if any ambiguity exists, it must be resolved against the party who prepared the contract." *Knipschield v. C-J Recreation, Inc.*, 74 Wn. App. 212, 215, 872 P.2d 1102 (1994) (citing *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 520, 527 P.2d 1115 (1974)). Although clauses purporting to exculpate an indemnitee from liability flowing solely from its own acts or omissions are not favored and are strictly construed, *Jones*, 84 Wn.2d at 520, we will enforce such provisions where the language of the agreement unquestionably demonstrates that this was the intent of the parties. *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 836-37, 271 P.3d 850 (2012).

¶26 Here, the relevant section of the 2004 purchase and sale agreement between the Burbridges and Radovich reads:

> Seller [Radovich] hereby agrees to indemnify and hold Purchaser [Burbridge/Bridges] harmless from: (a) any damage or deficiency due to breach of warranty, misrepresentation or nonfulfillment of any agreement on the part of Seller under this Agreement; (b) any and all liabilities or claims, whether accrued, absolute, contingent or otherwise, arising in respect of the Property which relate to any period prior to the closing, whether any such liabilities or claims have been asserted prior to or after the closing; and (c) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses connected with the foregoing, including reasonable attorneys' fees. The foregoing indemnification obligation of Seller shall survive the closing.

After determining that Radovich had not accepted Bridges' tender of defense, the trial court ruled that Bridges was "entitled to attorney fees and costs through the indemnification provision in the [purchase and sale agreement]."

¶27 The trial court correctly determined that the broadly worded indemnification provision of the purchase and sale agreement applied to Seattle Boat's claims against Bridges. This provision requires Radovich to indemnify Bridges for "any and all liabilities or claims . . . arising in respect of the Property." We have previously determined that the phrase "any and all claims" is to be given its ordinary meaning and includes all types of claims. *MacLean Townhomes, LLC v. Am. 1st Roofing & Builders, Inc.*, 133 Wn. App. 828, 831, 138 P.3d 155 (2006). Moreover, because Seattle Boat's claims against Bridges were based upon Bridges' failure to convey fee title to the entire commercial parcel—an event that was predicated upon Radovich's prior conveyance of a portion of that property through the 1981 quitclaim deed—these claims arose "in respect of the Property" and related to a "period prior to the closing." Finally, there is no indication that Radovich's duty to indemnify pursuant to this agreement depends upon whether Bridges prevails against the claims brought by a third party and relating to the commercial property.

¶28 Radovich contends, however, that because it was Bridges' failure to discover the recorded 1981 quitclaim deed that led to Seattle Boat's complaint, the provision cannot be interpreted to require indemnification for claims arising from Bridges' own errors. Although it is undoubtedly true that the conduct of the title insurer—Bridges' agent in the transaction—was partially responsible for Seattle Boat's claims, it is also clear that no litigation would have occurred had Radovich not attempted to convey the same property twice. Accordingly, this is not a situation where Bridges' liability to Seattle Boat flowed *solely* from its own acts and omissions. *Jones*, 84 Wn.2d at 520. Because the language of the indemnification provision clearly ap-

plies to Seattle Boat's claims against Bridges, the trial court did not err by determining that Radovich was required to indemnify Bridges for these claims.

¶29 Nevertheless, the trial court's award of attorney fees was improper. As we have previously explained, attorney fees sought pursuant to a contractual indemnity provision are an element of damages that must be proved to the trier of fact. *Jacob's Meadow*, 139 Wn. App. at 760. The goal of awarding money damages is to compensate for losses that are actually suffered, and a party claiming damages has the burden of proving its losses. *ESCA Corp. v. KPMG Peat Marwick*, 86 Wn. App. 628, 639, 939 P.2d 1228 (1997), *aff'd*, 135 Wn.2d 820, 959 P.2d 651 (1998). Accordingly, a party seeking the recovery of attorney fees pursuant to an indemnity provision bears the burden of presenting evidence regarding the reasonableness of the amount of fees claimed. *Jacob's Meadow*, 139 Wn. App. at 761. Moreover, "[a]s an element of damages, the measure of recovery . . . must be determined by the trier of fact." *Jacob's Meadow*, 139 Wn. App. at 760. Such damages must be proved at trial. *Jacob's Meadow*, 139 Wn. App. at 760.

¶30 Here, no evidence of Bridges' damages was adduced at trial. In an order bifurcating the trial into two phases, the trial court set a case schedule for the second phase of trial to "address all remaining issues, including damages." However, although the trial date was set for February 22, 2011, no such trial was ever held. Instead, following the completion of the first phase of trial, Bridges submitted a posttrial motion for "an award of attorneys' fees and costs against Radovich." The declaration of the lead attorney for Bridges accompanied the motion. The declaration contained a detailed accounting of the hourly rates of Bridges' attorneys, the time spent on particular aspects of the case, and descriptions of the work performed.[8] Radovich thereafter submitted a response to Bridges' motion, disputing Bridges'

---

[8] There are instances where a trial by affidavit is permitted. For instance, King County Local Family Law Rule 14, relating to child support and spousal mainte-

entitlement to an award of fees and requesting an evidentiary hearing "so that the full record can be developed." No evidentiary hearing was granted. Instead, relying on the aforementioned declaration and applying the "lodestar analysis,"[9] the trial court determined that Bridges' request for $376,469.41 in attorney fees was reasonable. The court entered judgment against Radovich in this amount.

¶31 Clearly, Bridges' damages were not proved at trial. No evidence or testimony regarding Bridges' expenses or losses was ever presented to the court in its role as trier of fact.[10] Bridges asserts that whether to hold an evidentiary hearing regarding attorney fees is a matter that is left to the trial court's discretion. While this may be true where fees are awarded as part of the costs of litigation against an adverse party to a contract, where attorney fees constitute an element of contract or tort damages, they must be proved to the trier of fact. *Jacob's Meadow*, 139 Wn. App. at 760. Moreover, the trial court's ruling deprived Radovich of any opportunity to demonstrate that Bridges failed to mitigate damages during its litigation with Seattle Boat. Whether reasonable alternative courses of action were open to the nonbreaching party to mitigate damages is a legitimate issue in the trial of the damages question. *See TransAlta*

---

nance, stipulates that a petition to modify child support generally may be heard on affidavits. Of course, this exception is inapplicable here.

[9] The lodestar method is appropriate where attorney fees are awarded as the costs of litigation between adverse parties. A trial court determines a reasonable attorney fee award by multiplying the hours reasonably expended in the litigation by a reasonable rate of compensation. *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 593-602, 675 P.2d 193 (1983); *Perry v. Costco Wholesale, Inc.*, 123 Wn. App. 783, 808, 98 P.3d 1264 (2004). After determining the lodestar figure, the amount may be adjusted to reflect factors such as the contingent nature or quality of the representation. *Perry*, 123 Wn. App. at 808 (quoting *Martinez v. City of Tacoma*, 81 Wn. App. 228, 239, 914 P.2d 86 (1996)).

[10] Given that this case was decided in a bench trial wherein the same judge determined both factual and legal issues, Bridges suggests that a posttrial evidentiary hearing could satisfy the requirement that damages be proved to the trier of fact. However, because no such evidentiary hearing was herein held, we need not determine under what circumstances, if any, such a proceeding might constitute a sufficient substitute for the mandated procedure.

*Centralia Generation, LLC v. Sicklesteel Cranes, Inc.*, 134 Wn. App. 819, 826, 142 P.3d 209 (2006). The trial court erred by awarding attorney fees to Bridges based upon the contractual indemnity provision where no proof of these damages was presented at trial.

## VI

¶32 Radovich next contends that the trial court erred by awarding attorney fees to Bridges based upon the principle of equitable indemnification. We agree.

¶33 Equitable indemnity constitutes a recognized equitable ground under which attorney fees may be awarded. *Blueberry Place Homeowners Ass'n v. Northward Homes, Inc.*, 126 Wn. App. 352, 358-59, 110 P.3d 1145 (2005). "[W]here the acts or omissions of a party to an agreement or event have exposed one to litigation by third persons—that is, to suit by persons not connected with the initial transaction or event—the allowance of attorney's fees may be a proper element of consequential damages."[11] *Armstrong Constr. Co. v. Thomson*, 64 Wn.2d 191, 195, 390 P.2d 976 (1964). Our courts have long considered such attorney fees to be recoverable as damages rather than as costs. *See, e.g., Wells v. Aetna Ins. Co.*, 60 Wn.2d 880, 882, 376 P.2d 644 (1962); *Curtley v. Sec. Sav. Soc'y*, 46 Wash. 50, 57-58, 89 P. 180 (1907).

¶34 The elements of this form of equitable indemnity are

(1) a wrongful act or omission by A toward B; (2) such act or omission exposes or involves B in litigation with C; and (3) C was not connected with the initial transaction or event, *viz.*, the wrongful act or omission of A toward B.

---

[11] This theory of recovery has sometimes been referred to as the "ABC rule" in Washington case law. *See Dauphin v. Smith*, 42 Wn. App. 491, 494, 713 P.2d 116 (1986) ("When the natural and proximate consequences of a wrongful act of A involve B in litigation with others, B may as a general rule recover damages from A for reasonable expenses incurred in that litigation, including attorney's fees.").

*Manning v. Loidhamer*, 13 Wn. App. 766, 769, 538 P.2d 136 (1975). All three elements must be satisfied for liability to attach. *Manning*, 13 Wn. App. at 769. A trial court's decision that the elements of equitable indemnity are met is a legal conclusion that is subject to de novo review on appeal. *Tradewell*, 71 Wn. App. at 126-27.

¶35 Here, in its judgment and order awarding attorney fees, the trial court determined that Bridges incurred "substantial legal fees and costs because of the actions of Radovich." The court identified these actions as (1) the "attempt to convey the same property twice," (2) "forgetting about the purported conveyance via quit claim deed to NYBA," (3) "orchestrating a take over of the Board of the NYBA to ensure it was hostile to the development proposed by [Seattle Boat]," and (4) "using his voting power and persuasion to initiate and pursue this litigation." The court then concluded that Bridges was "entitled to attorney fees under the statutory warranty deed because Radovich bears some responsibility for [Bridges'] involvement in this lawsuit."

¶36 As an initial matter, because attorney fees awarded pursuant to the principle of equitable indemnity are an element of damages, the trial court's award of attorney fees shares the same defect as its award pursuant to the contractual indemnity provision of the purchase and sale agreement. Because these damages were not proved at trial, the trial court erred by awarding attorney fees based upon the theory of equitable indemnity. *See Jacob's Meadow*, 139 Wn. App. at 759-62.

¶37 Moreover, for several additional reasons, the theory of equitable indemnity was improperly relied upon by the trial court. First, in order for the theory to apply, it must be proved that the defendant committed a "wrongful act or omission" against the party bringing the claim. *Manning*, 13 Wn. App. at 769. Generally, this wrongful act must involve a breach of contract or tortious conduct by the party against whom the claim is asserted. *Manning*, 13 Wn.

App. at 772. Radovich's use of his voting power within the NYBA and his orchestration of a board takeover were not "wrongful acts" within this sense; nor were these acts directed toward Bridges.

¶38 Similarly, Radovich's attempt to convey the same property twice cannot properly be viewed as a wrongful act or omission. Because the trial court previously determined that the 1981 quitclaim deed did not, in fact, convey fee title under the court's ruling, it cannot be that Radovich's conveyance of the commercial property to Bridges was wrongful. Indeed, pursuant to this ruling, Radovich breached neither the covenants of the statutory warranty deed nor his obligation to convey fee title pursuant to the purchase and sale agreement. Accordingly, there was no wrongful act or omission by Radovich supporting the application of equitable indemnification.

¶39 In addition, pursuant to well-established Washington law, " 'a party may not recover attorney fees under the theory of equitable indemnity if, in addition to the wrongful act or omission of A, there are other reasons why B became involved in litigation with C.' " *Blueberry Place*, 126 Wn. App. at 359 (quoting *Tradewell*, 71 Wn. App. at 128). Thus, Bridges cannot recover attorney fees under the theory of equitable indemnity if, in addition to Radovich's acts or omissions, there were other reasons for Seattle Boat's claims against Bridges. Here, it is undisputed that the title insurer—Bridges' agent during its transaction with Radovich—failed to discover the recorded 1981 quitclaim deed. Moreover, as the recording of a deed imparts constructive notice of the estate or interest acquired to all subsequent purchasers, *Biles-Coleman Lumber Co. v. Lesamiz*, 49 Wn.2d 436, 438, 302 P.2d 198 (1956), Bridges itself must be charged with notice of the potential title defect. Nevertheless, Bridges failed to notify Seattle Boat of this issue prior to the 2007 sale of the commercial property. Accordingly, because Bridges' own acts and omissions contributed to its involvement in litigation with Seattle Boat,

as did the negligent acts and omissions of the title insurer, Bridges cannot rely on principles of equitable indemnification to seek recovery of attorney fees from Radovich.[12]

¶40 Finally, we note that Radovich and Bridges contracted regarding damages for breach of the 2004 purchase and sale agreement. The broadly worded indemnity provision of the agreement stipulated that such damages would include attorney fees incurred in defense of third party claims against the purchaser. Where parties have contracted to fix their rights and liabilities, we see no room for equity to interfere with the bargain of the parties. *See* 3 DAN B. DOBBS, LAW OF REMEDIES § 12.12(2), at 315 (2d ed. 1993) ("[O]nce the parties have bargained about a discrete subject matter, their bargain, not a judicially imposed rule[,] controls their rights.").

¶41 Here, having bargained for a contractual indemnity provision, Bridges cannot now rely on principles of equitable indemnity to obtain consequential damages in the form of attorney fees. Because Radovich's liability for attorney fees in third party actions was fixed by contract, any reliance upon a judicially imposed rule is precluded. For all of these reasons, the trial court erred by determining that Bridges was entitled to attorney fees on the basis that Radovich "bears some responsibility" for Bridges' litigation with Seattle Boat.

## VII

¶42 Both Radovich and Bridges contend that they should be awarded their attorney fees and costs on appeal. However, as numerous issues in the case remain unre-

---

[12] Radovich further contends that because Bridges' motion for attorney fees was in fact an attempt by PNWT to recover its own costs incurred while defending Bridges, principles of equitable subrogation should preclude recovery. However, because PNWT did not bring a claim against Radovich, it has not attempted to "stand[ ] in the shoes of the insured." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 424, 191 P.3d 866 (2008). We need not determine whether PNWT is entitled to bring a subrogation claim where the insurer has made no attempt to do so.

solved, it cannot be determined which party will ultimately substantially prevail on the merits in this action. Accordingly, an award of attorney fees is inappropriate at this time.

¶43 We affirm the trial court's orders denying summary judgment to Radovich and granting partial summary judgment to Bridges. We reverse the trial court's award of attorney fees to Bridges and remand for further proceedings.

LEACH, C.J., and ELLINGTON, J., concur.

Review denied at 175 Wn.2d 1015 (2012).