IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN THE MATTER OF THE MARRIAGE OF, | No. 84720-1-I |
| ROBERT W. COONEY, | DIVISION ONE |
| Respondent, and | UNPUBLISHED OPINION |
| HILLARY A. BROOKS, | |
| Appellant. | |

SMITH, C.J. — Robert Cooney and Hillary Brooks were married in 1991 and separated in 2016. In June 2020, Cooney petitioned for dissolution. During discovery, Brooks requested that Cooney produce documents relating to any trusts that Cooney had established or of which he was a beneficiary. Cooney did not produce any documents. Soon thereafter, Cooney revealed in a deposition that he was trustee of his grandmother's trust and Brooks moved to compel production of the trust documents. But just days before the deadline for Cooney to produce the documents, the parties settled, waiving their rights to additional discovery. The court entered final orders a month later.

Over a year later, Cooney's grandmother passed away and Brooks discovered the trust and Cooney's interest in it as a beneficiary via the probate court filings. She subsequently moved to vacate the settlement agreement and dissolution decree on the grounds that Cooney had misrepresented his assets,

which the trial court denied. Brooks appeals, asserting that Cooney breached his fiduciary duty to disclose all assets and arguing that the trial court abused its discretion in denying her motion to vacate on those grounds. We disagree that Cooney breached his fiduciary duty and affirm.

FACTS

Hillary Brooks and Robert Cooney were married in December 1991 and separated in October 2016. In June 2020, Cooney petitioned for dissolution.

During dissolution proceedings, Brooks sought discovery from Cooney, including a request for "[a]ll trusts [Cooney had] established and all documents showing contributions [Cooney had] made to the trust, all trusts in which [Cooney was] a beneficiary, and all documents showing any distributions [Cooney] received . . . from January 1, 2016 to the present." Cooney did not produce any documents in response to this request.

Then, at his deposition in March 2021, Cooney disclosed that he was the trustee for his grandmother's trust, that he held her power of attorney for finances, and that he was listed on his grandmother's accounts. He denied receiving any compensation as trustee.

In April 2021, Brooks moved to compel discovery, claiming that Cooney's discovery responses were evasive and nonresponsive. In her motion, Brooks states that Cooney "testified trust documents exist but has not responded to the request relating to the same or produced responsive documents. . . . Such amounts potentially go to property distribution." And in her reply on that motion, Brooks claimed that Cooney was "a beneficiary of a trust involving Carmelina

2

Cooney and he needs to produce the trust documents immediately, and any others that might exist for other individuals."

On April 30, 2021, the trial court granted Brooks's motion to compel and ordered Cooney to produce responsive documents within 30 days. But on May 25, just days before Cooney was required to produce documents, the parties settled and signed a Civil Rule (CR) 2A separation contract and property settlement agreement. The agreement awarded 93 percent of the parties' community property to Brooks, totaling approximately $1.8 million. Under the terms of the agreement, both parties "warrant[ed] and agree[d]" that the agreement at the time of execution was "fair, just and equitable and that they [were] affixing their signatures hereto freely, knowingly, and voluntarily without duress or coercion of anyone." Both parties also "acknowledge[d] that each has an understanding of the nature and extent of their property and the benefits that are derived from said property" and "that no reliance whatsoever [was] placed upon representation[s] other than those expressly set forth" in the agreement. Further, each party attested that they had been advised by counsel "of the right to conduct legal discovery, obtain asset appraisals, and take other action to determine the nature and extent of the assets, liabilities, income and expenses of the Parties related to the awards" in the agreement. And they warranted that to "the extent that a Party has not taken steps to determine the nature and extent of the assets, liabilities, income and expenses of the Parties, that Party has willingly chosen not to do so to avoid the expense and acrimony of litigation." After they signed the settlement agreement, Brooks and Cooney submitted a notice of

3

settlement of all claims to the court in early June 2021.

A few weeks later, in late June 2021, Cooney moved to enforce the CR 2A agreement, claiming that Brooks had made material changes to the parties' final orders not agreed to by Cooney. Cooney claimed that Brooks added the following additional reliances in violation of the CR 2A agreement:

> 9. Community Personal Property
>
> Respondent entered the Agreement in reliance on Petitioner's statements, including those made under oath in the proceedings, that he is no longer employed by any Sound Physicians entity and has no financial interest in any Sound Physicians entity.
>
> Respondent entered the Agreement in further reliance on Petitioner's statements that he will no longer work as a hospitalist physician and will work instead at 50% of his historical income as a primary care physician.

The court granted Cooney's motion to enforce the CR 2A agreement, finding that "[n]either party raised an issue with regard to execution of the Agreement or its material terms" and that the additional findings proposed by Brooks "did not form the basis of the Agreement as written and signed by the parties." The court also found that Brooks "specifically agreed in Section 2.3 of the Agreement that she was not relying on any other representations that were not contained within the Agreement." The court then adopted Cooney's proposed findings of fact and entered final orders contemporaneously with the order to enforce.

Over a year after the court entered final orders, Brooks moved to vacate the dissolution decree under CR 60(b)(4) and (b)(11), alleging that it was procured by fraud, misrepresentation, or other misconduct because Cooney hid

4

that he was the "sole beneficiary" of his grandmother's trust.[1]  Brooks asserted that Cooney's failure to divulge information about the trust was a violation of his fiduciary duty to disclose all assets to her during dissolution proceedings.  She sought attorney fees, spousal support, and requested that the court compel production of the trust documents.  In her declaration in support of the motion, Brooks claimed that she only signed the CR 2A agreement because Cooney sent her an e-mail stating, "I will make $260,000 for the next four years and then have to bust my a** to make that after."  Brooks did not provide a copy of the e-mail.  She also claimed that "[h]ad [she] known about the Joint Trust, the bank accounts, and Robert's status as sole beneficiary to the estates of his grandmother and her companion, [she] would not have entered into the Agreement."

After a hearing, the court denied Brooks's motion.  It found that Brooks failed to prove by clear, cogent, and convincing evidence that fraud, misrepresentation, or other misconduct occurred.  It then found that the record clearly established that Brooks knew about the trust and Cooney's status as beneficiary before she signed the CR 2A agreement.  The court also agreed with Cooney that his contingent interest in a revocable trust was not an asset and found that the fact that Cooney was a possible beneficiary to the trust was not material to the outcome of the parties' agreement.  The court ordered Brooks to pay Cooney's attorney fees.  Brooks appeals.

---

[1]  Cooney is not, in fact, the sole beneficiary of the trust.

ANALYSIS

CR 60(b) Motion to Vacate

Brooks asserts that the court made two legal errors when it denied her CR 60(b)(4) motion to vacate that necessitate reversal. First, she contends the court erroneously concluded that Cooney's interest in the trust was not a "property" interest. And second, she maintains that even if the interest was not a property interest, the court erred in not considering it because it affected Cooney's economic circumstances. We disagree. Contrary to Brooks's contention, the trust created a "mere expectancy" rather than a property interest, and therefore, Cooney did not breach his fiduciary duty by failing to disclose it. Although Cooney should have disclosed the trust in the spirit of transparency— and was required to disclose it in response to Brooks's initial discovery requests—Brooks's knowledge of Cooney's beneficiary status and her subsequent signing of the CR 2A agreement days before Cooney's deadline to produce the trust documents eliminated the requirement that Cooney disclose his interest in the trust. Moreover, the court did not err by not explicitly considering whether the trust interest affected Cooney's economic circumstances because the court found that the interest was immaterial to the parties' settlement agreement.

1. Duty of Disclosure

Spouses owe each other the highest fiduciary duty. Peters v. Skalman, 27 Wn. App. 247, 251, 617 P.2d 448 (1980). This duty does not cease during dissolution. Seals v. Seals, 22 Wn. App. 652, 655, 590 P.2d 1301 (1979). "The

6

full disclosure mandated by the fiduciary relationship assumes that one party has information which the other needs to know to protect [their] interests." In re Marriage of Burkey, 36 Wn. App. 487, 490, 675 P.2d 619 (1984). Thus, spouses have a specific fiduciary duty to disclose all community and separate property before dissolution. Seals, 22 Wn. App. at 656. This duty to disclose does not require spouses to make use of formal discovery or "resort to subpoenas to discover these assets." Seals, 22 Wn. App. at 655; see also In re Marriage of Bresnahan, 21 Wn. App. 2d 385, 405, 505 P.3d 1218 (2022) (wife could rely on husband's asset disclosures without conducting discovery). But spouses are not required to know the exact financial status of the other spouse. Friedlander v. Friedlander, 80 Wn.2d 293, 302, 494 P.2d 208 (1972). Rather, the requirement that spouses have full knowledge of the other's property interests functions to ensure the parties "can intelligently determine" whether to enter into settlement agreements and so that they will not be "prejudiced by the lack of information." In re Marriage of Cohn, 18 Wn. App. 502, 507, 569 P.2d 79 (1977).

"Spouses also have a duty to inform the court of their assets." Bresnahan, 21 Wn. App. 2d at 404. In dissolution proceedings, the trial court has broad discretion to make a "just and equitable" distribution of property based on the factors set out in RCW 26.09.080. In re Marriage of Wright, 179 Wn. App. 257, 261, 319 P.3d 45 (2013). However, the court cannot make a fair allocation of assets and debts without first gaining "thorough knowledge of the parties' property and liabilities." In re Marriage of Grant, 199 Wn. App. 119, 130, 397 P.3d 912 (2017). A settlement agreement or dissolution decree "must

7

adequately identify the assets so as to permit the court to approve the agreement or make proper division." Yeats v. Yeats' Estate, 90 Wn.2d 201, 206, 580 P.2d 617 (1978). "At a minimum, the documents must put the parties and the court upon notice that the assets exist." Yeats, 90 Wn.2d at 206. If parties in a dissolution enter into a separation contract, that contract "shall be binding upon the court unless it finds, after considering the economic circumstances of the parties . . . that the separation contract was unfair at the time of its execution." RCW 26.09.070(3).

### a. Whether the Trust Created a Property Interest

In order to determine whether Cooney breached his fiduciary duty to Brooks, we must first consider whether the trust created a property interest, disclosure of which would affect the property distribution. We conclude that it did not.

As a preliminary matter, we must establish whether California or Washington law applies to this inquiry. The trust states that it shall be construed in accordance with California law. Neither party appears to dispute that California law applies.[2] Absent a conflict between California and Washington law, we defer to the trust's choice-of-law clause. Erwin v. Cotter Health Ctrs., 161 Wn.2d 676, 694-96, 167 P.3d 1112 (2007). Thus, we apply California law to determine the trust interest.

Under California law, we interpret de novo a trust instrument, unless there

---

[2] Cooney states that California law applies and cites to both California and Washington law to interpret the trust interest. Brooks claims that the interest created is the same under either California or Washington law.

8

is ambiguity and conflicting extrinsic evidence as to the meaning of the ambiguous terms. Pena v. Dey, 39 Cal. App. 5th 546, 551, 252 Cal. Rptr. 3d 265 (2019). In interpreting a trust document, "the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it." Scharlin v. Superior Court, 9 Cal. App. 4th 162, 168, 11 Cal. Rptr. 2d 448 (1992). "Ordinary words must be given their normal, popular meaning and legal terms are presumed to be used in their legal sense." Scharlin, 9 Cal. App. 4th at 168.

Trust instruments typically create either present interests, entitling a beneficiary to immediate enjoyment of the trust property, or future interests, giving a beneficiary rights to receive trust assets at a later time. GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, LAW OF TRUSTS AND TRUSTEES § 181 (3d ed. 2012). These interests may be contingent or vested. A vested interest is absolute—the occurrence of any future event will not diminish nor destroy it. RESTATEMENT (THIRD) OF PROPERTY § 25.3 (2010).[3] A contingent interest is more fragile—it may be subject to a condition precedent and may not take effect in possession or enjoyment. RESTATEMENT § 25.3. The determining factor for a contingent interest "is the possibility, not the probability, that the interest will not take effect in possession or enjoyment." RESTATEMENT § 25.3. If a gift depends on a future event, such as a beneficiary's survival, it is usually determined to be contingent. BOGERT & BOGERT, supra, § 182.

---

[3] California courts look to the Restatement (Third) of Property for guidance in interpreting trusts and the interests they create. Dudek v. Dudek, 34 Cal. App. 5th 154, 165-66, 246 Cal. Rptr. 3d 27 (2019).

Whether an interest is vested or contingent is not entirely determinative of whether the interest is "property" subject to division in a dissolution action. Contingent interests can be property interests, "no matter how improbable the contingency." In re Marriage of Brown, 15 Cal. 3d 838, 846 n.8, 544 P.2d 561 (1976). Contingent interests are property interests when they are derived from an enforceable, contractual right. See, e.g., Brown, 15 Cal. 3d at 841-42 (unvested pension and contingent retirement benefits are property rights because they represent a contractual right derived from an employment contract); In re Marriage of Moore, 226 Cal. App. 4th 92, 102, 171 Cal. Rptr. 3d 762 (2014) (accrued vacation benefits are property interests that, if earned during marriage and before separation, are divisible community property); In re Marriage of Kilbourne, 232 Cal. App. 3d 1518, 1524, 284 Cal. Rptr. 201 (1991) (attorney's contractual right to receive legal fees for services rendered on contingency basis is a property interest even if contingency does not ripen until after separation).

In contrast, "mere expectancies" are not interests of any kind. Brown, 15 Cal.3d at 844, 846 n.8. "The term expectancy describes the interest of a person who merely foresees that [they] might receive a future beneficence, such as the interest of an heir apparent . . . or of a beneficiary designated by a living insured who has the right to change the beneficiary." Brown, 15 Cal.3d at 844-45, n.6 (" 'The interest of a beneficiary designated by an insured who has the right to change the beneficiary, is like that of a legatee under a will, a mere expectancy of a gift.' . . . But if the holder acquires a contractual right to be named as beneficiary . . . [their] interest is no longer an expectancy, but a property right."

(quoting <u>Grimm v. Grimm</u>, 26 Cal. 2d 173, 175-76, 157 P.2d 841 (1945))); <u>see also</u> <u>In re Estate of Giraldin</u>, 55 Cal. 4th 1058, 1065-66, 290 P.3d 199 (2012) (beneficiary's interest in property transferred into a revocable trust is "'merely potential and can evaporate in a moment at the whim of the [settlor].' " (alteration in original) (internal quotation marks omitted) (quoting <u>Steinhart v. County of Los Angeles</u>, 47 Cal. 4th 1298, 1319, 223 P.3d 57 (2010))); <u>Marriage of O'Connell</u>, 8 Cal. App. 4th 565, 577, 579, 10 Cal. Rptr. 2d 334 (1992) (absent evidence that beneficiary is an irrevocable beneficiary of the insurance policy, they have no property interest in the proceeds until the insured's death). "[T]he defining characteristic of an expectancy is that its holder has no enforceable right to his beneficence." <u>Brown</u>, 15 Cal. 3d at 845 (emphasis omitted) (alteration in original).

Here, the trust states in pertinent part:

FIFTH AMENDMENT TO THE
PETER F. HENNINGSEN AND CARMELINA COONEY
2004 REVOCABLE TRUST

. . . .

D: Distribution on Death—Property.  On the death of the Surviving Settlor, any property not effectively appointed by the Surviving Settlor shall be distributed as follows:

. . . .

The residual Estate property is to be distributed to ROBERT W. COONEY, M.D.  If DR. COONEY fails to survive the surviving settlor by 30 days, his gifts shall be distributed to his issue by right of representation.

This language creates a contingent interest.[4] The trust is revocable and Cooney's right to receive the estate property hinges on a future event—the death of his grandmother, Carmelina Cooney, and her partner, Peter Henningsen. This characterization is also supported by the limitation in the last sentence—if Cooney dies before the testators, his interests will pass to someone else. See BOGERT & BOGERT, supra, § 182 (if beneficiary is required to survive, the gift is subject to a condition precedent and therefore, contingent).

But the fact that Cooney's interest is contingent does not mean that it is automatically a "property" interest. Here, the interest created by the revocable trust is analogous to that held by a legatee under a will or a beneficiary designated by an insured who retains the right to change the beneficiary—both are expectancies of a gift. Neither creates an enforceable right to the benefit—both are " 'merely potential' " and " 'can evaporate in a moment at the whim of the [settlor]' " or insured. Giraldin, 55 Cal. 4th at 1066 (alteration in original) (quoting Steinhart, 47 Cal. 4th at 1319) (beneficiaries of trusts); O'Connell, 8 Cal. App. 4th at 577, 579 (beneficiaries designated by insured). Likewise, Cooney's

---

[4] Brooks argues on appeal that Cooney's interest had vested because he later became sole trustee and "settlor." Brooks appears to rely on a single sentence from an affidavit of change of trustee, which states,

> The name(s) of the settlor(s) of the Trust is (are): Robert W. Cooney, Successor Trustee

But the document also refers to Carmelina and Peter as "previous trustees"—not "previous settlors"—and Brooks does not explain how Cooney could become a co-settlor of the trust without a modification of the trust instrument. We disagree with Brooks's argument that a change in successor trustee resulted in a vested interest.

interest in the trust was "merely potential"; it could change at any moment on the whim of his grandmother and her partner. And unlike retirement benefits, which are property interests despite being unvested and contingent, Cooney possessed no contractual right to enforce the benefit created by the trust.[5] Only upon the death of Carmelina and Peter would the trust become irrevocable and Cooney's rights enforceable. Because Cooney's interest was uncertain to vest and he had no contractual right to enforce it, we conclude that Cooney's contingent interest in the trust was an expectancy and not a property interest.[6]

### b. Whether Cooney Breached his Fiduciary Duty

Even if Cooney's interest in the trust was not "property," Brooks still contends that Cooney was required to disclose his interest because it affected his economic circumstances, and thus, could affect the parties' property distribution or maintenance awards. We disagree. The interest did not affect the parties' economic circumstances because it was contingent. And because the interest was not a property interest, Cooney did not breach his fiduciary duty to

---

[5] This conclusion makes sense considering the lack of enforceable rights contingent beneficiaries have in other contexts. See, e.g., Babbitt v. Superior Court, 246 Cal. App. 4th 1135, 1143-44, 1146, 201 Cal. Rptr. 3d 353 (2016) (beneficiaries of revocable trusts lack standing to petition probate court for accounting of assets while settlors are alive; even upon death of co-settlor, beneficiary did not have any right to obtain information about disposition of assets while trust was revocable).

[6] This outcome aligns with Washington law, too, which is important for conflict-of-law purposes. Washington courts also do not treat potential inheritance as property to be divided or considered in dissolution proceedings. See In re Marriage of Hurd, 69 Wn. App. 38, 49, 848 P.2d 185 (1993) (concluding that anticipated inheritance is a mere expectancy); In re Matter of Marriage of Leland, 69 Wn. App. 57, 71, 847 P.2d 518 (1993) (approving of Brown and holding that mere expectancies are not divisible property).

Brooks.

Spouses in dissolution proceedings have "a specific fiduciary duty to disclose all community and separate property before dissolution." Bresnahan, 21 Wn. App. 2d at 403.

Here, Brooks's actions terminated Cooney's fiduciary duty. After Brooks learned of the trust, she moved for an order compelling Cooney to produce the relevant trust documents. She specifically stated in her motion that Cooney had acknowledged the existence of a trust, for which he was the trustee, and that Cooney was "a beneficiary of a trust involving Carmelina Cooney and he need[ed] to produce the trust documents immediately." The court granted her motion and ordered Cooney to produce trust documents within 30 days of the court's order. Then, just days before Cooney's deadline to produce documents, and while she was represented by counsel, Brooks—who is a lawyer—voluntarily chose to sign the settlement agreement. In doing so, Brooks warranted that she had not been coerced into signing the agreement and that she was knowingly waiving all rights to future discovery. Brooks's voluntary actions before the discovery deadline eliminated any further duty on Cooney's part to produce the trust documents. Because she had the opportunity to examine the trust documents and chose to sign away her right to do so, Brooks cannot now argue that she is entitled to discovery of those same trust documents. Similarly, because Brooks expressly warranted that she was not coerced into signing the agreement, she cannot now claim that she was coerced into signing the agreement absent any evidence of coercion or force.

14

And in any event, the court did consider the interest's potential impact on the parties' economic circumstances and their settlement agreement by finding that the interest was "not material to the outcome of [the parties'] agreement."

In supplemental briefing, Brooks contends that even if she had notice of the trust, under Bresnahan, this notice did not impose upon her a duty of due diligence to conduct further discovery. Though we agree that there is not a duty of due diligence, Brooks's reading of Bresnahan is overbroad. In Bresnahan, the wife discovered a hidden bank account several months after the dissolution was finalized and moved to vacate the dissolution decree. 21 Wn. App. 2d at 391-92. The parties then stipulated that any previously undisclosed or omitted assets discovered in the future would be divided following the division in the parties' original settlement agreement. Bresnahan, 21 Wn. App. 2d at 393. A year later, the wife discovered several other previously undisclosed accounts and again moved to vacate. Bresnahan, 21 Wn. App. 2d at 393-95. On appeal, this court rejected the husband's argument that the wife should have exercised due diligence in looking for other hidden assets because she was on notice that more assets might exist after uncovering the first account. Bresnahan, 21 Wn. App. 2d at 409.

The facts of Bresnahan are readily distinguishable from the present case. Here, Brooks knew of the trust documents while the wife in Bresnahan had no prior knowledge that other assets existed before she signed a settlement agreement. 21 Wn. App. 2d at 390-95. And contrary to Brooks's urging, Bresnahan does not protect parties that willfully disregard information uncovered

15

in discovery when that information becomes useful later on.

We conclude that Cooney did not breach his fiduciary duty.

2. CR 60(b)(4)

Having determined that Cooney did not breach his fiduciary duty, we turn now to whether the court abused its discretion in denying Brooks's motion to vacate on the basis of fraud. Brooks contends that the court erred in denying her motion because the court's findings are unsupported by substantial evidence. She specifically challenges the court's findings that (1) she knew of the trust before signing the settlement agreement, and (2) that the trust interest was immaterial to the parties' settlement agreement. Cooney counters that Brooks is estopped from arguing fraud on appeal because she did not appeal the court's final orders.

We disagree that Brooks is estopped from arguing fraud on appeal. However, because the court's findings are supported by substantial evidence and because Brooks failed to meet her burden of proving by clear and convincing evidence that Cooney committed misconduct, we conclude that the court did not abuse its discretion in denying the motion to vacate.

*a. Estoppel*

We first address Cooney's claim that Brooks is estopped from arguing fraud on appeal because she should have appealed the final orders rather than filing a motion to vacate. As Brooks raised the issue of fraud in her motion to vacate, we disagree that she is precluded from arguing it on appeal.

CR 60(b)(4) does not allow a party "to relitigate an issue of fraud placed

16

squarely before and decided by the trial court." Guardianship of Adamec, 100 Wn.2d 166, 178, 667 P.2d 1085 (1983). Thus, an appeal from a denial of a CR 60(b) motion is "limited to the propriety of the denial not the impropriety of the underlying judgment." Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980).

Contrary to Cooney's assertions, Brooks did not argue fraud before the final orders were entered. Her arguments in opposition to Cooney's motion to enforce the settlement agreement concerned Cooney's representations about his employment and future earning potential. Brooks first raised the possibility of fraud in her motion to vacate and is not estopped from arguing it on appeal.

### b. Denial of Motion and Challenged Factual Findings

We next turn to whether the court abused its discretion in denying Brooks's motion because its findings of fact are unsupported by substantial evidence. We conclude that the court did not abuse its discretion.

We review a trial court's decision on a CR 60(b)(4) motion for an abuse of discretion. Lindgren v. Lindgren, 58 Wn. App. 588, 595, 794 P.2d 526 (1990). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Lindgren, 58 Wn. App. at 595. We do not substitute our judgment for the trial court's or weigh the evidence on appeal. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

CR 60(b)(4) permits a court to vacate a final judgment for fraud, misrepresentation, or other misconduct of an adverse party. "The rule is aimed at judgments unfairly obtained, not factually incorrect judgments." Sutey v. T26

Corp., 13 Wn. App. 2d 737, 756, 466 P.3d 1096 (2020). To prevail on a CR 60(b)(4) motion, the moving party must establish by clear and convincing evidence that the adverse party's fraudulent conduct or misrepresentations caused the entry of the judgment. Bresnahan, 21 Wn. App. 2d at 406. "Clear and convincing evidence is evidence showing that a fact is 'highly probable.' " Bresnahan, 21 Wn. App. 2d at 406 (quoting In re Vulnerable Adult Petition for Winter, 12 Wn. App. 2d 815, 830, 460 P.3d 667 (2020)). "A trial court may vacate a judgment based on fraud and enter findings and conclusions establishing the nine elements of common law fraud" or it may vacate based on misrepresentations or other misconduct without entering such findings. Bresnahan, 21 Wn. App. 2d at 406. The misrepresentation or misconduct does not need to be intentional, it may be merely careless. Hor v. City of Seattle, 18 Wn. App. 2d 900, 912, 493 P.3d 151 (2021).

We review the trial court's factual findings for substantial evidence, which is evidence " 'sufficient to persuade a rational fair-minded person the premise is true.' " Winter, 12 Wn. App. 2d at 830 (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). Unchallenged findings of fact are verities on appeal. In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011).

Brooks contends that the court's finding that she had knowledge of the trust is unsupported by substantial evidence because Cooney "did not say that he had ever spoken with Brooks about the trust or his beneficiary interest in it." She also contends that the court's finding that the interest was "immaterial" to the

18

settlement agreement is both unsupported by substantial evidence and an error of law. We are unpersuaded.

Substantial evidence supports the court's finding that Brooks knew about the trust. Cooney testified in his deposition that he was a trustee and Brooks relied on this disclosure when she moved to compel discovery of the trust documents. Brooks also stated in her reply on that motion that Cooney "is a beneficiary of a trust involving Carmelina Cooney and he needs to produce trust documents immediately, and any other that might exist for other individuals." Given that Brooks explicitly asked about Cooney's grandmother's trust, a rational fair-minded person would believe that she knew the trust existed.

Substantial evidence also supports the court's finding that the trust interest was immaterial to the parties' settlement agreement. Cooney testified that his grandmother was using the assets in the trust to pay for "her care, for maintenance, for housing, insurance, taxes, et cetera." There was no guarantee that assets or funds would left in the trust when Cooney's grandmother and her life partner passed. The trust also provided that money was to go to other individuals and that Cooney's parents would have a life estate in one of the properties. Above all, the trust was revocable—Cooney's interest could have been extinguished at any time. Given the nebulous nature of the trust, the fact that Cooney's interest was not a "property" interest under the law, and the parties' agreement that Brooks would receive 93 percent of their community property, substantial evidence supported the court's finding that the trust interest was immaterial to the parties' settlement agreement.

19

Because substantial evidence supported the court's findings and Cooney did not breach his fiduciary duty, we conclude that the court did not abuse its discretion in denying Brooks's motion to vacate.

3. CR 60(b)(11)

Brooks maintains that the court erred in denying her motion to vacate the decree under CR 60(b)(11) because Cooney should not be permitted "to breach his duties and his warranty in the agreement without consequences." We disagree that the facts of this case constitute the type of "extraordinary circumstance" warranting vacation under CR 60(b)(11).

Under CR 60(b)(11), a court may vacate a judgment for "[a]ny other reason justifying relief from the operation of the judgment." But the rule is not a "blanket provision" authorizing relief for all conceivable reasons. State v. Keller, 32 Wn. App. 135, 141, 647 P.2d 35 (1982). Rather, we apply CR 60(b)(11) only "to serve the ends of justice in extreme, unexpected situations." In re Det. of Ward, 125 Wn. App. 374, 379, 104 P.3d 751 (2005); see, e.g., In re Marriage of Flannagan, 42 Wn. App. 214, 222-23 709 P.2d 1247 (1985) (substantial change in the law constituted extraordinary circumstances); cf., In re Marriage of Yearout, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985) (complaints about separation agreement's unfairness do not constitute extraordinary circumstances). The reasons for vacation under CR 60(b)(4) must relate to "irregularities which are extraneous to the action of the court or go to the question of the regularity of its proceeding." Marie's Blue Cheese Dressing, Inc. v. Andre's Better Foods, Inc., 68 Wn.2d 756, 758, 415 P.2d 501 (1966).

20

As discussed, Cooney did not breach his fiduciary duty to Brooks during the dissolution. Because Brooks's CR 60(b)(11) argument rests wholly on this premise, and she does not identify any irregularity on the part of the court, we conclude that the court did not err in denying her motion to vacate.

Attorney Fees at Trial

Brooks contends that the trial court erred in awarding Cooney fees because neither Cooney nor the court supplied a basis for doing so. She also argues that she should be awarded attorney fees for Cooney's alleged intransigence. Cooney counters that the court properly awarded him fees because, as the prevailing party, he was entitled to fees under the settlement agreement. He also claims that the court correctly awarded him fees for Brooks's intransigence. We agree with Cooney that the settlement agreement provides a basis for the court to award him fees but disagree that the court awarded fees for intransigence.

Whether a party is entitled to attorney fees is a question of law that we review de novo. Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 86, 104-05, 285 P.3d 70 (2012). "The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity." Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). If attorney fees are authorized, we will uphold an attorney fee award unless the court abused its discretion. Workman v. Klinkenberg, 6 Wn. App. 2d 291, 305, 430 P.3d 716 (2018). "A trial court abuses its discretion if its decision is manifestly

unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).  We may affirm on any basis supported by the record.  Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

Here, the parties' CR 2A agreement provides that "[i]n any action or proceeding related to this Agreement, whether for specific enforcement, damages or other remedy, the prevailing Party shall be entitled to an award of reasonable attorney fees, expert fees, or other costs reasonably incurred in such action or proceeding."  Because Cooney prevailed before the trial court on an action to enforce the agreement, the court did not err in awarding him his reasonable attorney fees on this basis.  We note, though, that Cooney's argument that the fee award was based on intransigence is unsupported by the record.  The court did not mention intransigence, or anything similar to it in its order denying the motion to vacate.  Nor did Cooney request fees on the basis of intransigence.  Because the fee award is proper under the CR 2A agreement, we affirm the award.

Attorney Fees on Appeal

Both parties warrant that they are entitled to attorney fees on appeal. Brooks requests fees due to Cooney's alleged intransigence and Cooney requests fees under the parties' settlement agreement.  Because Cooney prevails on appeal, we award him attorney fees on appeal.

RAP 18.1 permits a party to request attorney fees on appeal where applicable law grants them that right.  Intransigence on appeal or before the trial

court may support an award of attorney fees on appeal. In re Marriage of Mattson, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). "Intransigence includes foot dragging and obstruction, filing repeated unnecessary motions, or making the trial unduly difficult and costly by one's actions." In re Marriage of Bobbitt, 135 Wn. App. 8, 30, 144 P.3d 306 (2006). Willful misrepresentation or willful mischaracterization of community property during dissolution proceedings may constitute intransigence. Bresnahan, 21 Wn. App. 2d at 411-12.

Here, Brooks has not shown that Cooney's actions rose to the level of intransigence. Although Cooney should have been more forthcoming about his interest in the trust, Brooks had the opportunity to discover the trust documents before signing the settlement agreement and chose not to. Any additional cost of litigation she occurred was thus self-inflicted. We therefore decline to award Brooks fees on this ground. And because Cooney prevails on appeal and the parties' settlement agreement provides for fees for the prevailing party, we award him his reasonable attorney fees.

Affirmed.

Smith, C.J.

WE CONCUR:

Díaz, J.

Cheung, J.

23